UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

LEWIS

**_ORAL ARGUMENT REQUESTED_**

16-CV-03071 (ALC)

Plaintiff,

- against -

THE ROOSEVELT ISLAND OPERATING
CORPORATION, et al.

Defendants.

_____

### *(AMENDED)*
### **PLAINTIFF'S MEMORANDUM OF LAW IN**
### **OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

ANTHONY ROTONDI
*Attorney for Plaintiff*
5 Columbus Circle, Suite 800
New York, NY 10019
Tel: 212-709-8340
ajr@ajrotondi.com
www.ajrotondi.com

# Contents

PRELIMINARY STATEMENT...............................................................................................1

STATEMENT OF FACTS.....................................................................................................2

STANDARD OF REVIEW....................................................................................................4

*A.   Defendants Misconstrue the Appropriate Standard of Review for Sovereign Immunity Defense*.........4

*B.   Defendants' Reliance On Twombly and Ashcroft While Ignoring Recent Second Circuit Clarification in Littlejohn Is Misplaced.*.......................................................................................................5

ARGUMENT.........................................................................................................................6

I.     THE ELEVENTH AMENDMENT DOES NOT BAR ANY OF PLAINTIFF'S CLAIMS AGAINST ANY DEFENDANT BECAUSE, *INTER ALIA*, RIOC IS NOT A "STATE OR AN AGENCY" ENTITLED TO THE PROTECTIONS OF THE DOCTRINE OF SOVEREIGN IMMUNITY..................................................................................................................6

*A.   RIOC Is Not Entitled to Sovereign Immunity*.........................................................6

*B.   Six Factor Test For Sovereign Immunity Determinations*........................................7

i.     How the Entity is Funded – RIOC is Self-Sufficient...............................................8

ii.    Whether The Entity's Obligations Are Binding Upon the State................................9

II.    PLAINTIFF ADEQUATELY PLED CAUSES OF ACTION ALLEGING DISPARATE TREATMENT, HOSTILE WORK ENVIRONMENT, AND RETALIATION ON ACCOUNT OF RACE AND GENDER..........................................................................................................11

*a.*    Plaintiff's Allegations Regarding Changes In The RIOC Executive Team And His Replacement By Someone Outside The Protected Class Alone Provide Sufficient Facts Supporting "An Inference Of Discrimination."........................................................................................................14

*b.*    Plaintiff Appropriately Pled Defendants' "Pattern And Practice" Of Discrimination Which Contrary To Defendants' Assertions Is Not Available Only For Claims Brought By The Government Or A Class Of Plaintiffs...........................................................................................................14

*A.   Plaintiff Satisfied the Pleading Requirements for Hostile Work Environment Claims*.......................15

*B.   Plaintiff Satisfied the Pleading Requirements for a Retaliation Claims*................................17

III.   THE COMPLAINT SATISFIES THE PLEADING REQUIREMENTS FOR PLAINTIFF'S CLAIMS AGAINST THE OFFICER INDIVIDUAL DEFENDANTS AND THE BOARD INDIVIDUAL DEFENDANTS..................................................................................................19

IV.    PLAINTIFF'S CAUSES OF ACTIONS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES MUST STAND BECAUSE, *INTER ALIA* DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY..........................................................................................................21

V.     PLAINTIFF PLED VIABLE CLAIMS FOR PUNITIVE DAMAGES WHICH SHOULD BE DETERMINED AT TRIAL.................................................................................................22

VI.    PLAINTIFF'S CLAIMS FOR NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION, AND TRAINING SHOULD BE DISMISSED AS TO RIOC AND THE BOARD INDIVIDUAL DEFENDANTS..................................................................................................23

VII.   SHOULD THE COURT GRANT ANY PART OF DEFENDANTS' MOTION AND DISMISS ANY CAUSE OF ACTION OR DEFENDANT, OR FIND THAT SUBJECT MATTER

JURISDICTION IS LACKING, PLAINTIFF RESPECTFULLY SUBMITS THAT ANY SUCH DISMISSAL SHOULD BE WITHOUT PREJUDICE AND WITH LEAVE TO RE-PLEAD .............. 25

CONCLUSION...................................................................................................................................... 25

## PRELIMINARY STATEMENT

Plaintiff filed a Complaint detailing claims against Defendants, which adequately pled the elements of those claims. Nonetheless, Defendants filed the instant Rule 12(b)(6) and 12(b)(1) Motion to Dismiss the Complaint (the "Motion" or "MTD").  Indicative of the weakness of Defendants' Motion, Defendants ask this Court to dismiss the Complaint based upon legal authority of cases determining the sufficiency of evidence supporting claims, including summary judgment motions and post-trial motions.  Indeed, in the rare instances where Defendants proffer motion to dismiss cases, that authority is cited for basic propositions.  Defendants then piece together soundbite quotes of the rare motion to dismiss case cited -- with the overwhelming majority of post-discovery motions testing the sufficiency of evidence -- to attempt to hold Plaintiff to a new standard of pleading in which Plaintiff would be required to allege more facts in the Complaint than he would need to prove in order to defeat a motion for summary judgment. This is not how the law works.

Defendants also repeatedly ignore propositions of law in cases cited in their own brief and egregiously ignore a plethora of allegations from the Complaint.  Tellingly, Defendants' memorandum of law does not include a "Statement of Facts," an implicit acknowledgment that the detailed allegations in the Complaint warrant denial of their Motion.

There are many other glaring deficiencies with the Motion, and here are just a few:

- Defendants claim that the Complaint somehow does not plead personal involvement.  The detailed Complaint is replete with allegations of misconduct, including failure to fulfill fiduciary obligations (including taking corrective action), by Defendants Charlene M. Indelicato, Frances A. Walton, Claudia McDade and each of the Directors:  Michael Shinozaki, Margie Smith, David Kraut, Katherine Grimm, Fay Christian, Howard Policy, Mary Beth Labate and Darryl Towns.

- Defendants provide misleading argument on the issue of sovereign immunity. The Motion claims that it is "well-established" that RIOC is entitled to sovereign immunity.  This is simply not true.  Defendants fail inform the Court that of the only two non-binding cases which found RIOC to have sovereign immunity, one was a summary judgment decision with much evidence in the record, and, in the other the Honorable Judge Rakoff said the issue of RIOC's sovereign immunity is "far from

1

doubt." Critically, two key factors that were not present in <u>Chafetz</u> and <u>Jones</u> are present here, namely that: (i) RIOC is inarguably self-sufficient financially as admitted in their Annual Filings and in a Hearing by then RIOC Chair Defendant Mary Beth Labate and (ii) the Attorney General ("AG") is not involved in this action.

- Defendants attempt to attack Plaintiff's retaliation claim when Defendants and their own counsel have admitted that Plaintiff was terminated for reported wrongdoing at RIOC, i.e. whistleblowing. (See e.g. (Compl at 57)

Defendants' Motion is deficient for a host of reasons, and the unlawful conduct on which Plaintiff's claims are based is the type of malicious, wanton, willful and recklessly indifferent conduct that warrants not only the denial of their Motion, but the imposition of punitive damages.

## STATEMENT OF FACTS[1]

The events giving rise to the claims in this Complaint are particularly egregious. Plaintiff served as General Counsel ("GC") to the Corporation in an exemplary fashion for nearly four years. Notwithstanding Plaintiff's recognized contributions to the Corporation, or that he had received a performance-based raise just a few weeks earlier, he was terminated immediately by an e-mail sent on a Friday afternoon by RIOC President Charlene Indelicato.  The termination was the culmination of Plaintiff being subjected to a hostile work environment, discrimination and retaliation based upon Plaintiff's race, gender and that he had reported concerns about wrongdoing at the Corporation, including with regard to financial and discrimination issues, i.e. "whistleblowing." Plaintiff was the only male and only minority (black) member of the executive team. After he was terminated, Defendants replaced him with a white women leaving RIOC with an executive team of all white woman of similar age. Strikingly, Defendants and their Counsel even have admitted that Plaintiff's termination was an act of retaliation. (Complaint at ¶ 3)

The Complaint also includes facts concerning negligent hiring, supervision, retention and training by the Director Defendants – for failure to properly exercise their duties. The Director

---

[1] Plaintiff provides a summary of the Complaint allegations and respectfully refers the Court to the Complaint for the entirety of facts alleged.

Defendants knew that Indelicato had a propensity for discrimination based on prior lawsuits, but hired her anyway and didn't supervise her properly. The Directors Defendants also egregiously ratified her unlawful conduct in terminating Plaintiff by failing to take corrective action and voting in white female replacement for the black male Plaintiff. (See Complaint at ¶¶ 47, 52, 53, 113 to 116, 119.)[2]

Defendants discriminatory conduct is illustrated through Plaintiff his being subjected to discriminatory and offensive: (i) directives to undertake tasks because he was black; (ii) comments about his skin color / complexion (iii) comments about Blacks and Caribbeans; (iv) comments about the behaviors of ethnic people (v) comments about other blacks including a high ranking executive in the Governor's Executive Chamber; (vi) worse treatment than White executives in terms of benefits and severance; and (vii) the poor treatment of RIOC black employees by Indelicato, Walton, McDade and RIOC Board. (Complaint at ¶¶ 55, 75, 78, 91, 93, 95, 96)

Defendants Walton and McDade also engaged in discriminatory and hostile conduct toward Plaintiff, in an effort to ostracize him and prevent him doing his job. For example: (1) they changed the lock on his door after he was wrongfully terminated making it look like Plaintiff had engaged in some sort of illicit conduct; (1) acted in concert with Indelicato to Plaintiff's exclusion on many issues; (2) made disparaging comments about blacks; (3) concealed relevant information; and (5) unilaterally reducing the Legal budget with no input from Plaintiff and (4) changing the lock on Plaintiff's office door after he was wrongfully terminated to give the wrongful appearance that Plaintiff had engaged in illicit conduct. (Complaint at ¶¶ 60, 63, 79, 97, 100, 101)

Plaintiffs was also treated far less favorably than his white female counterparts McDade and Walton in that he was cursed at, screamed at berated, when they never were and they received raises

---

[2] The Directors have continued to cause Plaintiff harm by condoning the dissemination of false information about his work ethic and pretext after the fact. (¶¶ 82, 116)

when he did not even though they were far less deserving. (Complaint 71, 72, 73, 77, 83-87).[3]

Defendant McDade's conduct was particularly egregious given her position as Director of Human

Resources. McDade has made particularly offensive and racist remarks about blacks, including

telling her direct report not to speak with certain RIOC employees "because they are Black"

(Complaint ¶ 81) In addition, McDade troublingly and without any good reason withheld Plaintiff's

personnel file for months, which suggests foul play. (Complaint ¶ 82)

Finally, shortly after Plaintiff reported concerns about discrimination and financial

wrongdoing at RIOC involving Indelicato, Walton and McDade, he was terminated.[4] (Compl. at

55-56). The Director Defendants who always spoke glowingly about Plaintiff failed to take

corrective action and ratified the unlawful conduct by voting in a white woman to replace the black

male Plaintiff resulting in an all-white and all female executive team. (See Complaint at ¶¶ 47, 52,

53, 65, 113 to 116, 119.)

## STANDARD OF REVIEW

### A. Defendants Misconstrue the Appropriate Standard of Review for Sovereign Immunity Defense

Defendants assert that in "resolv[ing] disputed jurisdictional facts, including disputes over

issues of Eleventh Amendment sovereign immunity," "a court does not draw inferences in favor

of the plaintiff" and that "plaintiff must prove by a preponderance of the evidence that such

jurisdiction exists." (MTD at p. 2) (citing <u>Makarova v. United States,</u> 201 F.3d 110, 113 (2d Cir.

2000) and <u>State Employees Bargaining Agent Coalition v. Rowland,</u> 494 F.3d 71, 77 n4 (2d Cir.

2007)). *First,* Defendants ignore that the <u>Rowland</u> decision upon which Defendants rely

recognized Second Circuit authority to the contrary holding that "when reviewing dismissal under

---

[3] Defendants do not cite a single "comparator" motion to dismiss case, and accordingly, the comparison of Plaintiff to Walton at this stage of the proceedings is appropriate.

[4] As the Second Circuit has noted, "the close temporal proximity" between plaintiff's protected action and adverse employment action "ay in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action." K<u>aytor  y.   Blee. Boat Corp.,</u> 609 F.3d 537, 552 (2d Cir. 2010)

Fed.R.Civ.P. 12(b)(6) or 12(b)(1), 'the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff.'" Rowland, 494 F.3d 71 (Quoting Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997). Additionally, Defendants omit that the Rowland Court opined that "in adjudicating a motion to dismiss for lack of subject-matter jurisdiction, a district court may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." Rowland, 494 F.3d 71 (citing Antares Aircraft, L.P. v. F. of Nigeria, 948 F.2d 90, 96 (2d Cir. 1991). Likewise, Harris cited by Defendants held that "A court may fulfill its duty by reference to evidence outside the pleadings." Citing See Zappia Middle East Construction Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

### B. Defendants' Reliance On Twombly and Ashcroft While Ignoring Recent Second Circuit Clarification in Littlejohn Is Misplaced.

Defendants cherry pick quotes from two cases for the proposition that to survive a 12(b)(6) motion for "causes of action, alleging race and gender-based disparate treatment, hostile work environment, and retaliation, in violation of Title VII, § 1981, § 1983, NYSHRL and NYCHRL" a plaintiff must plead facts adequate "to state a claim for relief that is plausible on its face." (MTD at 5) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). However, recently in Littlejohn v. City of N.Y., 795 F.3d 297 (2d Cir. 2015) – cited and relied upon by Defendants in the MTD – the Second Circuit relaxed the facts required to pled under Iqbal to survive a motion to dismiss. Id. at 311. Under the current standard as the Second Circuit explained in Littlejohn, to survive a motion to dismiss a plaintiff need only allege: "(1) member[ship] of a protected class…., [(2) qualify[cation] for the position [] sought,] (3) … an adverse employment action, and (4) can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation." Littlejohn, 795 F.3d at 311. The Second Circuit specifically held that a "plaintiff cannot reasonably be required to allege more facts in the complaint

than the plaintiff would need to defeat a motion for summary judgment made prior to the

defendant's furnishing of a nondiscriminatory justification." <u>Littlejohn</u>, 795 F.3d at 311;

<u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002) (holding complaint need not contain specific

factual allegations to state a prima facie case of discrimination and Rule 9(b) does not explicitly

require greater pleading requirements set forth in Rule 8(a) for discrimination cases).

**ARGUMENT**

**POINT I**

I.  **THE ELEVENTH AMENDMENT DOES NOT BAR ANY OF PLAINTIFF'S CLAIMS AGAINST ANY DEFENDANT BECAUSE, *INTER ALIA*, RIOC IS NOT A "STATE OR AN AGENCY" ENTITLED TO THE PROTECTIONS OF THE DOCTRINE OF SOVEREIGN IMMUNITY**

### A. *RIOC Is Not Entitled to Sovereign Immunity*

Defendants' assertion -- without any real analysis -- that sovereign immunity bars claims

other than Title VII against "RIOC and the Board, as well as the Officer Individual Defendants and

the Board Individual Defendants in their official capacities" is unavailing.   *First*, Defendants baldly

claim that "it is *well-established* that RIOC specifically is entitled to protection from suit in federal

court for purposes of sovereign immunity." (MTD at p. 4) (emphasis added) To support the

purported "well-established" law, Defendant cites two district court cases involving RIOC that are

non-binding and inapplicable to this Action. (*See* MTD at p. 4, citing *Chafetz v. Roosevelt Island

Operating Corp.* 2000 WL 1277337 (SDNY, Sept. 8, 2000) and *Jones v. Roosevelt Island

Operating Corp.et al.* 2013 WL 6504428 (SDNY, Dec. 7, 2013)).  Moreover, the Hon. Jed S.

Rakoff, who presided over and issued the more recent of the decisions in *Jones*, disagrees with

Defendants' view that the issue is "well-established."  To the contrary, during the October 10, 2013

oral argument in *Jones,* Judge Rakoff's ruled that "*[he] agree[s] with plaintiff's counsel that the

issue is not totally free from doubt.*" indicate the opposite is true.[5]  (TAB 1 annexed hereto,

---

[5]The transcript reveals the following exchange:

    THE COURT: Well, thank you very much. Both of you actually distilled the whole issue very, very

6

Transcript at p. 10) (emphasis added) (annexed hereto).  <u>Chafetz</u> – the other case Defendants rely

upon – related to a summary judgment motion submitted after Plaintiff had an opportunity to seek

evidence to support his alleged jurisdictional basis.

In addition, as discussed in more detail below, there are key factual differences present in

the instant case that were not present in <u>Chafetz</u> or <u>Jones,</u> which completely alter the analysis and

warrant denial of Defendants' motion.

### *B.  Six Factor Test For Sovereign Immunity Determinations*

The factors the Second Circuit considers in determining whether RIOC is an "arm of the

state" entitled to sovereign immunity are:

> (1) how the entity is referred to in the documents that created it;
>
> (2) how the governing members of the entity are appointed;
>
> (3) how the entity is funded;
>
> (4) whether the entity's function is traditionally one of local or state government;
>
> (5) whether the state has a veto power over the entity's actions; and
>
> (6) whether the entity's obligations are binding upon the state.

<u>Mancuso v. New York State Thruway Authority</u>, 86 F.3d 289, 293 (2d Cir. 1996)

Having relied on non-binding[6] and factually inapposite cases that acknowledge the

---

nicely.

I am going to grant the motion, although *I agree with plaintiff's counsel that the issue is not totally free from doubt*, but on the whole I think Judge Buchwald's opinion is persuasive. I will write a short opinion so you will have something there for the purpose of any appeal. . .

MR. LAWLOR: If I may, your Honor, with the dismissal of RIOC from this action, I'm not totally sure of the interplay here, but could that be *without prejudice as to a filing in state court*? The issue that I had

THE COURT: Yes, it's with prejudice with respect to the folks we talked about earlier before we got to this issue, but here it's -- the wording "with prejudice" and "without prejudice" is awkward in a jurisdictional thing. This Court lacks jurisdiction over the claims we were just discussing *That in no way prevents you from filing those claims in state court*.

(TAB 1 annexed hereto, Transcript at p. 10) (emphasis added) (annexed hereto).

[6] The non-binding effect of effect of sovereign immunity determinations is exemplified by the only case other than <u>Chafetz</u> and <u>Jones</u> case that Defendants cite as support for their request for sovereign immunity protection.  Defendants' assert that In <u>Martin v. Lanigan</u>, 541 N.Y.S.2d 142 (1989) a "suit against State

uncertainty of the issue, Defendants proffer no analysis of the factors courts review in sovereign immunity determinations, other than to misstate that "[t]he same factors that led the courts in Chafetz and Jones to determine that RIOC is an arm of New York State remain applicable in this case." (MTD at 4, n. 2).   Nothing could be further from the truth.   While the Mancuso six-factors were applied in Chafetz and referenced in Jones, certain highly relevant facts in the instant case were not present and/or explored in those decisions, which critically change the analysis and warrant denial of sovereign immunity; specifically RIOC's financial self-sufficiency and the absence of the AG in this action.

### i.   How the Entity is Funded – RIOC is Self-Sufficient

The first critical difference in factors relates to "how the entity is funded." The Chafetz court noted that the (i) "State's funding is a key consideration," and (ii) the analysis is "not on initial funding, but on current funding," but [punted] on this factor holding "the record on this motion is unclear as to whether RIOC has actually received appropriations from the State in recent years or is self-funding." Chafetz at *3-4.   In Jones, the Court noted that in Chafetz "the entity's funding structure did not clearly cut either way" and relied on this in reaching its decision. Jones at *7. Here, however, there is no question that RIOC is self-sufficient financially and, accordingly, this "key consideration" militates / dictates against immunity.

Indeed, during an October 2005 hearing of the NYS Assembly Committee on Corporations, Authorities and Commissions, Defendant Mary Beth Labate, then Chair of the RIOC Board, testified unequivocally that RIOC now *"run[s] the island on a fiscally self-sufficient basis without*

---

Thruway Authority board members in their official capacity was a claim against the State and was dismissed on the basis of sovereign immunity." (MTD at 4). First, Martin v. Lanigan was not a Court of Appeals case – as indicated by the citation format – but rather a Third Department decision. More importantly, just seven years later – in a case conveniently not cited by Defendants, -- the Second Circuit held that the same State Thruway Authority is not entitled to sovereign immunity. Mancuso v. N.Y. State Thruway Auth. , 86 F.3d 289, 307 (2d Cir. 1996) (affirming the district court's rejection of Eleventh Amendment immunity for the State Thruway Authority).

*state or city subsidies* that [it] received in the past," and that RIOC has "*cutoff*" such State and City subsidies.[7] (emphasis added) A copy of the hearing transcript is attached hereto as TAB 2 (the "LaBate Tr. at 5") Defendants Kraut and Shinozaki were also on the Board at the time.

In addition, RIOC has filed Public Authority Annual Reports for the past six years (for fiscal years 2011-2016), each containing statements acknowledging that RIOC *"is self-sustaining"* and *"neither borrows nor depends on appropriations."*[8] Relevant pages of the Public Authority Annual Reports are annexed hereto collectively as TAB 3. (2011 Report at p. 5; 2012 Report at p. 7; 2013 Report at Section III (iii); 2014 Report at p. 12; 2015 at p. 11; 2016 Report at p. 13) (emphasis added.)

In light of Defendants' party admissions and Annual Filings – certain of which were submitted by Defendants Walton and Indelicato (then CFO and CEO/President) – Defendants are estopped from arguing that this "key consideration" not considered by Jones or Chafetz weighs in favor of sovereign immunity. Indeed, quite to the contrary, it weighs heavily against sovereign immunity.

    ii.  Whether The Entity's Obligations Are Binding Upon the State

---

[7] The hearing transcript is attached as (TAB 2) is available at http://www.rioc.com/pdf/MBL%20Final%20Statement.pdf. Labate also stated: (i) *"RIOC has in fact used the subsidy cutoff as an opportunity to get our own house in order, and the result has been a self-sufficient administration* that is better able to plan for the future for the betterment of our residents." (Labate Tr. at 9) (emphasis added) and (ii) "Rather than being critical of RIOC's fiscal management, it would seem we should be commended for *setting an example that other authorities around the state should aspire to in terms of being fiscally self-sufficient."* (Labate Tr. at 9.) (emphasis added.)

[8] Each report contains one or both of the following statements: (i) *"Roosevelt Island Operating Corporation is self-sustaining*: it generates sufficient revenues from long term ground and commercial leases – residential fees, ground rent, commercial rent, and public safety fees; service fees from its Tramway and Bus Operations; and other revenues to fully meet its operational expenses" and (ii) *"Roosevelt Island Operating Corporation neither borrows nor depends on appropriations* and thus is minimally exposed to market, interest rate, and economic risks." Links to the Filings: https://rioc.ny.gov/PARIS/FY10-11/Annual-Report-FY1011.pdf; https://rioc.ny.gov/PARIS/FY11-12/Annual-Report-FY1112.pdf; https://rioc.ny.gov/PARIS/FY12-13/Annual-Report-FY1213.pdf; https://rioc.ny.gov/PARIS/FY13-14/Annual-Report-FY1314.pdf; https://rioc.ny.gov/PARIS/FY14-15/Annual-Report-FY1415.pdf; https://rioc.ny.gov/PARIS/FY15-16/Annual-Report-FY1516.pdf

The other key difference which Defendants omit is that here they are represented by private / insurance counsel, not the Attorney General.  In both <u>Chafetz</u> and <u>Jones</u>, the AG defended the cases and thus the sixth-factor, whether the entities obligations were binding on the state, was clear.[9] Critically, the AG's absence strongly suggests the AG's office has no indemnification obligations. Accordingly, the sixth-factor in the test, like the third-factor, weighs against immunity.[10]

Notably, in an increasing number of jurisdictions, however, courts have held that where a municipality or other political subdivision purchases liability insurance, its immunity from tort liability is removed to the extent of the coverage of the insurance.  The support for this rationale is that the primary reason for the immunity doctrine – that is, the protection of public funds – no longer exists when a governmental unit has insurance protection and, in this situation, there is no need for application of the doctrine.[11]

In sum, even assuming the other four factors were properly considered in <u>Chafetz</u> and <u>Jones</u>, which is arguable, these two factors (fiscal self-sufficiency and absence of the AG) dictate that sovereign immunity should not apply.

---

[9] The State is unequivocally not obligated to satisfy RIOC's corporate debts, see N.Y. Unconsol. § 6395(1) (the "RIOC Act"), such as payroll and benefit obligations. The RIOC Act discusses potential State indemnification obligations for liabilities, claims or judgments arising out of the "development, management or operation of Roosevelt Island," id. § 6392(1), but unequivocally states:  "Any member, officer or employee of such corporations seeking to be saved harmless or indemnified or to claim any other benefits available pursuant to this section or <u>section seventeen of the public officers law</u> shall comply with the procedural requirements of such <u>section seventeen</u>. As used in this section the terms "member", "officer" and "employee" shall include a former member, officer or employee, his estate or judicially appointed personal representative."

[10] Plaintiff respectfully requests the Court take Judicial Notice of TAB Nos. 1 to 3 per Rule 201(b)(2) & (c)(2) for the Rule 12(b)(1) Motion as proof of the matter asserted, to illustrate the need for discovery on subject matter jurisdiction prior to determining the 12(b)(1) Motion, or as just some of the additional facts Plaintiff may plead so that any potential dismissal should be without prejudice and with leave to amend.

[11] See <u>Sexton v. City of Hannibal</u>, 832 F. Supp. 2d 1060 (E.D. Mo. 2011) (when a public entity purchases liability insurance for tort claims, sovereign immunity is waived to the extent of and for the specific purposes of the insurance purchased); <u>Payne v. DeKalb County</u>, 414 F. Supp. 2d 1158 (N.D. Ga. 2004) (sovereign immunity waived to the extent counties have liability insurance coverage for the alleged wrongs committed by public officials); <u>Arrington v. Martinez</u>, 716 S.E.2d 410 (N.C. Ct. App. 2011) (a town or municipality may waive sovereign immunity through the purchase of liability insurance).

## POINT II

II.     **PLAINTIFF ADEQUATELY PLED CAUSES OF ACTION ALLEGING DISPARATE TREATMENT, HOSTILE WORK ENVIRONMENT, AND RETALIATION ON ACCOUNT OF RACE AND GENDER**

Apparently in recognition that they are without a defense to the Action, rather than submitting legal support for their positions, Defendants spend pages upon pages of their motion of their Motion droning on with a misplaced theme that "[t]he Complaint largely consists of facts that are irrelevant, false, and/or misleading, or conclusory statements and/or legal conclusions without specific facts to support the allegations. (MTD 8-9)   A simple read of the Complaint, which is replete with specific detailed factual allegations, clearly illustrates the absurdity of this position repeatedly advanced by Defendants.  Apparently, Defendants believe that if they repeat those assertions enough times, somehow it will become true.

Defendants also attempt to attack the quality of the "evidence" in Plaintiff's Complaint, apparently seeking to have the Court enforce a post-trial evidentiary threshold in order for the Complaint to survive Defendants' 12(b)(6) Motion to Dismiss.  For example, Defendants' claim that Plaintiff baldly asserts that Indelicato made comments about his 'skin color/complexion,' but provides no other facts to substantiate the allegation." (MTD at p. 5 at n. 3) Defendants also claim this is the only racial motivated conduct directed at Plaintiff, which is completely undermined by a plethora of allegations in Complaint.  (See Complaint at ¶¶ 55, 60, 63, 75, 78, 79, 91, 93, 95, 96, 97, 100, 101) Perhaps one of the most baffling of these attempts is Defendants admission that "Plaintiff describes in *great detail the circumstances surrounding his termination"*, but then incredulously asserting that the illegal conduct that occurred in connection with his termination is "totally irrelevant" to Plaintiff's Complaint, which asserts unlawful retaliation and wrongful termination. (MTD at p 6) (emphasis added.)

In another stark example, Defendants copy in paragraph 68 and 65 of the Complaint (below) as a purported example of a "conclusory allegation" that the Court should disregard:

- "...the last full executive RIOC team, prior to Defendant Indelicato's appointment, was comprised of a Hispanic female (President & CEO), a White male (VP & CFO), a Hispanic male (VP of Operations), and a Black male (VP & General Counsel). The racial and gender makeup of the executives was 50% Hispanic, 25% Black (for a total of 75% Minority), 25% White, 75% male and 25% female. Subsequent to the appointment of Indelicato, Defendants RIOC, RIOC Board, Individual Directors, McDade, and Indelicato changed the profile of the executive positions at RIOC to 0% Hispanic, 0% Black, 0% Minority, 100% White, and 100% female. Compl. ¶ 68.

- "By terminating Plaintiff and replacing him with another White female around the same age as Indelicato, Defendants concluded the transition of RIOC's entire Executive positions from a racially and gender diverse group of executives to exclusively all female and all White executives around the same age." Compl. ¶ 65.

Defendants not only refer to these hard facts as "conclusory allegations", but then attack the truth of the statements by claiming that "Plaintiff provides deliberately skewed and misleading facts in an attempt to show that Defendants sought to eviscerate employees at RIOC who were not white and female." (MTD 8-9)

After sifting through Defendants' repetitions regarding conclusory allegations, Defendants' argument can be boiled down to:

- Plaintiff has not pled facts showing an inference of race or gender discrimination (MTD at 7)

- Plaintiff's "pattern-and-practice" method of proof is available only as to claims brought by the government or a class of plaintiffs, so Plaintiff is prohibited from making such a claim. (MTD at p 9) (Citing Chin, 685 F.3d at 150.)

- Plaintiff also attempts to show an inference of racial discrimination by adducing evidence that similarly situated employees were treated more favorably. However, Plaintiff cannot rely on the employment experiences of any of the other individual RIOC employees to whom he refers in the Complaint because he has not sufficiently pled that they are similarly situated to him, or that they were treated differently or more favorably than him. (MTD at 9) (citing Mandell v. Cnty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003)

Notwithstanding the abundancy of facts Plaintiff pled supporting his claims, Defendants argue that that Plaintiff has not pled facts to satisfy the "minimal burden of showing facts suggesting an inference of discriminatory motivation" as required under Littlejohn. 795 F.3d at 311. Astonishingly, to support this assertion Defendants cite exclusively to summary judgement motion decisions notwithstanding the Second Circuit's specific admonishment that a "plaintiff

cannot reasonably be required to allege more facts in the complaint than the plaintiff would need to defeat a motion for summary judgment." Littlejohn, 795 F.3d at 311. Defendants mix and match quotes from summary judgment motion decisions and decisions on post-trial motions with quotes from the scant motion to dismiss decisions to string together legal propositions that simply put are false and misleading.  For example, the Motion asserts:

> The Second Circuit recently confirmed that the Plaintiff must provide plausible facts to support a minimum inference of discriminatory motivation to survive a motion to dismiss. See Littlejohn, 795 F.3d at 311. Once he has done so, the burden then shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the employment action. McDonnell Douglas Corp., 411 U.S. at 802. The plaintiff must then establish that the defendant's proffered reason is a mere pretext for actual discrimination. See McDonnell Douglas Corp., 411 U.S. at 804. The Court must determine whether Plaintiff can satisfy his "ultimate burden of persuading the trier of fact that the defendant *intentionally discriminated* against the plaintiff." Reeves v. Sanderson Plumbing Products, Inc., 503 U.S. 133, 143 (2000) (citation omitted) (emphasis added); Littlejohn, 795 F.3d at 311. These standards require dismissal of Plaintiff's discrimination claims. (MTD at 6-7)

> Defendants' reliance on Reeves v. Sanderson Plumbing Products, Inc., 503 U.S. 133, 143

(2000) to support their specious legal conclusion that "[t]he Court must determine whether Plaintiff can satisfy his 'ultimate burden of persuading the trier of fact that the defendant *intentionally discriminated* against the plaintiff,'" at the Rule 12(b)(6) motion to dismiss stage is absurd.  (MTD at p. 7) (emphasis added by Defendants) Reeves was a decision relating to an appeal of a post-trial motion challenging the sufficiency of the evidence submitted at trial – not at the Rule 12(b)(6) motion to dismiss pleading stage.[12]

Even under the standard in the summary judgment motion decisions that Defendants rely upon held "in discrimination cases where state of mind is at issue, [the Second Circuit] affirms a grant of summary judgment in favor of an employer sparingly because 'careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of

---

[12] Additionally, Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) -- the case quoted in Reeves as support for Defendants' quoted soundbite but reflected in the MTD as "citation omitted" -- likewise was a determination of a post-trial motion relating to the sufficiency of evidence.

discrimination.'" <u>Mandell v. County of Suffolk</u>, 316 F.3d 368, 377 (2d Cir. 2003) (quoting <u>Graham</u>

<u>v. Long Island R.R.</u>, 230 F.3d 34, 38 (2d Cir. 2000) (Cited in MTD at 9).

> **a. Plaintiff's Allegations Regarding Changes In The RIOC Executive Team And His Replacement By Someone Outside The Protected Class Alone Provide <u>Sufficient Facts Supporting "An Inference Of Discrimination."</u>**

Plaintiff's Complaint presented hard facts illustrating changes in the racial and gender make-

up of Defendant RIOC's executive team during Defendant Indelicato's presidency. (Compl. 3, 65,

68) In response, Defendants inappropriately challenge the veracity of the information pled and

repeat their mantra of conclusory allegations. However, Defendants own cases establish the

[fallacy] of their position. <u>Littlejohn</u>– one of the rare motion to dismiss cases cited by Defendants

states: "*an inference of discrimination also arises when an employer replaces a terminated or*

*demoted employee with an individual outside the employee's protected class.*" <u>Littlejohn</u>, 795 F.3d

297 at 312 (emphasis added) (collecting Second Circuit cases); <u>see also</u> <u>Zimmermann v. Assoc.</u>

<u>First Capital Corp.</u>, 251 F.3d 376, 381 (2d Cir. 2001) ("mere fact that a plaintiff was replaced by

someone outside the protected class will suffice for the required inference of discrimination")

Because Defendants replaced Plaintiff who is a male black with a white woman, this required

"inference of discrimination" applies equally to Plaintiff's race and gender causes of action.

(Compl 3, 37, 54).

> **b. Plaintiff Appropriately Pled Defendants' "Pattern And Practice" Of Discrimination Which Contrary To Defendants' Assertions Is Not Available <u>Only For Claims Brought By The Government Or A Class Of Plaintiffs</u>**

Defendants reliance on <u>Chin v. Port Auth. of N.Y. & N.J. Inc.</u>, 685 F.3d 135 (2d Cir. 2012)

for the misstated proposition that "Plaintiff cannot allege pattern and practice claims because such

claims can only be brought by the government or a class of plaintiffs." (MTD at 6) *First*, as with

most cases that Defendants rely upon, <u>Chin</u> was a decision on post-jury trial motion and not

"allegations" made in a Compliant at the pleading stage. Second, in the very same opinion the

Second Circuit in <u>Chin</u> states (which Defendants ignore): "[t]o be sure, proof that an employer

engaged in a pattern or practice of discrimination may be of substantial help in demonstrating an employer's liability in the individual case", and "[e]vidence of an employer's general practice of discrimination may be highly relevant to an individual disparate treatment or to a disparate impact claim."[13]

Defendants reliance on Simmons Grant v. Quinn Emanuel Urquhart & Sullivan, LLP, 915 F. Supp. 2d 498, 505 (S.D.N.Y. 2013) to support their erroneous "pattern and practice" argument is similarly unavailing. *First*, Simmons was a summary judgement case addressing evidentiary standards; and second, Simmons addressed "[p]laintiff's attempt to establish the adverse employment action element of her prima facie case of intentional discrimination through statistical evidence", and there can be no question that Plaintiff's termination here was an adverse employment action.[14]

## A. *Plaintiff Satisfied the Pleading Requirements for Hostile Work Environment Claims*

Defendants outdid themselves in proposing that Plaintiff did not satisfy the pleading requirements for a hostile work environment cause of action. Defendants cite no fewer than 15 cases as purported authority for that proposition, but each case is either a decision on a summary judgment motion or a post-trial appeal. Moreover, Defendants provide no analysis of any of the cases cited, choosing instead to choose a select sentence out of context from each cited case.

This Court has held that "NYCHRL discrimination claims undergo a slightly different, more

---

[13]   Defendants' position is contradicted by other authority in this Circuit: "[R]elevant to the issue. . . is data suggesting that a termination was part of a general pattern of discrimination. . ." Ganzy v. Allen Christian School, 995 F.Supp. 340, 349-50 (E.D.N.Y. 1998) (citing McDonnell Douglas, 411 U.S. at 805, 93 S.Ct. 1817; Lieberman v. Gant, 630 F.2d 60, 68 (2d Cir. 1980) ("[e]vidence of general patterns of discrimination by an employer is relevant even in an individual disparate treatment case"); Louison v. Blue Cross Blue Shield of Greater New York, 1990 WL 108347, *1 (S.D.N.Y. 1990) (plaintiff's document requests seeking information regarding other complaints of discrimination were relevant); Flanagan v. Travelers Ins. Co., 111 F.R.D. 42, 48 (W.D.N.Y. 1986) (same).

[14] Defendants fare no better by relying on Lopez v. Met. Life. Ins. Co., 930 F.2d 157 (1991), which was an appeal from a 4-day bench trial and the court's opinion concerning the statistical evidence presented was limited to the particular facts of that case.

permissive analysis than the federal and state statutes . . . [which] require a materially adverse

action for a race discrimination claim to be actionable, the NYCHRL expands the definition of

discrimination beyond 'conduct [that] is tangible (like hiring or firing) ... to encompass all

allegations that a plaintiff is treated differently based on protected status." <u>Kerman-Mastour</u>, 814

F. Supp. 2d 355, 366 (S.D.N.Y. 2011) Additionally, "Courts must analyze NYCHRL claims

separately and independently from any federal and state law claims, construing the

NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a

construction is reasonably possible." <u>Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.</u>, 715 F.3d

102, 109 (2d Cir. 2013)) (internal quotation marks omitted).

Defendants' reliance on <u>Williams v. NYC Housing Auth.</u>, 61 A.D.3d 62, 78 (1st Dep't

2009) to support their hostile work-environment argument is unavailing. (MTD at p. 11)

Defendants offer a misrepresentation of the holding in <u>Williams</u>, stating "Plaintiff must show that

the acts complained of are more than 'petty slights and trivial inconveniences.' <u>Id.</u> at 80. This

is <u>not</u> accurate – the burden is not on the Plaintiff. Instead, <u>Williams</u> states "defendants can still

avoid liability if they prove that the conduct complained of consists of nothing more than what a

reasonable victim of discrimination would consider 'petty slights and trivial inconveniences.'"

Indeed, <u>Fleming v. MaxMara USA, Inc.</u>, 371 F. App'x 115, 119 (2d Cir. 2010), cited in Defendants'

MTD held that the NYCHRL "does not require the same severity or pervasiveness that federal law

requires" for a hostile work environment claim. (<u>See</u> MTD at 11**)**

Plaintiffs reliance another summary judgment motion decision of <u>Heba v. New York State

Division of Parole</u>, 537 F.Supp.2d 457, 468 (E.D.N.Y. 2007) is likewise unavailing. (<u>See</u> Opp at

12). Not only was this also a summary judgment case, but the Court based it's reasoning based on a

finding through an evaluation of the evidence that "the context of the [] [parties' relationship and . .

. the context of the arguments, the comments are more reflective of the growing antagonism

between former friends, rather than discriminatory animus." (See MTD at p. 11 <u>citing</u> <u>Heba</u>, 537

F.Supp.2d 457, 468 (E.D.N.Y. 2007) Although the basis for the court's finding is not apparent from the parenthetical Defendants provided in the MTD, which states "supervisor's angry outbursts and use of profanity did not constitute an environment of pervasive hostility and abuse."

### B.  *Plaintiff Satisfied the Pleading Requirements for a Retaliation Claims*

Defendants' arguments challenging the pleading of Plaintiff's discrimination claims premised on summary judgment motions and post-trial motions seemed far-reaching – because they are – but Defendants' arguments against the retaliation claims go even further.  Defendants repeatedly demand (at the pleading stage) that Plaintiff: (i) establish his claims by a "preponderance of the evidence" (MTD at p. 13); (ii) provide "proof" that he reported potentially improper salary activity (MTD at p. 13); and (iii) provide "proof" of the exact date he made those reports (MTD at p. 14).  Defendants go on to then challenge the veracity of the statements, claiming the allegations are baseless and particularly dispute that Plaintiff reported concerns regarding questionable salary activity and racial discrimination, referring to his reporting as, among other things, "unsubstantiated." (MTD at pp. 14, 15)  Defendants' challenge to the veracity of the allegations is remarkable not only because such a challenge is wholly inappropriate for a Rule 12(b)(6) motion, but because as set forth in Paragraph 57 of the Complaint, Melick and Porter – the same counsel on Defendants' MTD – "admitted that Plaintiff was terminated for reporting potential wrongdoing."[15] (Compl. ¶ 57; see also Id. ¶ 3)

---

[15] Complaint Paragraph 57 reads:

> Astoundingly, Defendants subsequently admitted that Plaintiff was terminated for reporting potential wrongdoing, commonly referred to as "Whistleblowing." That is, in an almost surreal fashion, through their counsel, Melick and Porter, and otherwise Defendants admitted that Plaintiff's dismissal was a retaliatory act done in response to his reporting concerns about potential misconduct and wrongdoing. Defendants thereby expressly admitted that their conduct violated and was in direct contradiction to, inter alia, the protections afforded to Mr. Lewis under: 42 U.S.C. 1983; 42 U.S.C. 1981; Federal and State Constitutional provisions including the First Amendment; Title VII; the New York City Human Rights Law; and the NYS Human Rights Law. Defendants' conduct also violated RIOC's own claimed policy of affording "whistleblowers" protection against adverse employment action as well as the NYS Public Officers Law Section that mandates the same protections be afforded employees who report potential misconduct. Defendants' apparent comfort with admitting that they violated a slew of Constitutional and statutory civil rights protections exemplifies the

Defendants' inappropriate challenge to the pleadings does not even stop there, opting to

allege their own facts to claim that Plaintiff should have "reported his concerns through any of the

established channels at RIOC, such as with human resources, or by making an internal complaint of

discrimination pursuant to established RIOC policies and procedures regarding same." (MTD at 14)

Surprisingly, Defendants finally cite a decision on a Rule 12(b)(6) motion to dismiss,

Mandavia v. Columbia Univ., 912 F.Supp.2d 119 (S.D.N.Y. 2012). (MTD at p. 15) Unsurprisingly,

Defendants cite the case merely for the use of yet another irrelevant soundbite. Id. Defendants omit

the Mandavia court's holding regarding the pleading requirements and appropriate standard of

review for an employment discrimination or retaliation Complaint, which specifically do not

include an onus on Plaintiff to establish a prima facie case at the pleading stage. Mandavia., 912

F.Supp.2d at 126. The Court in Mandavia held:

> In suits "alleging employment discrimination or retaliation," a plaintiff is "not
> required to plead facts sufficient to establish a prima facie case." Krasner v. HSH
> Nordbank AG, 680 F. Supp. 2d 502, 512 (S.D.N.Y. 2010) [**17] (Lynch, J.) (citing
> Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, 515, 122 S. Ct. 992, 152 L. Ed. 2d
> 1 (2002)). "Rather, the ordinary rules for assessing the sufficiency of a complaint
> under Federal Rule of Civil Procedure 8(a)'s notice pleading standard applies . . .
> [and] requires only a short and plain statement of the claim with sufficient factual
> heft to sho[w] that the pleader is entitled to relief." Id. at 512.

Mandavia., 912 F.Supp.2d at 126; See also Vega v. Hempstead Union Free School Dist., 801

F.3d 72 (2d Cir. 2015) (reversing dismissal and holding that for a retaliation claim to survive a motion

to dismiss, a plaintiff need only "plausibly allege that: (1) defendants discriminated -- or took an

adverse employment action -- against him, (2) 'because' he has opposed any unlawful employment

practice").

---

manner in which certain Defendants conducted themselves with an air of impunity during Defendant
Indelicato's self-described reign as dictator. (Cmplt. at ¶ 57; see also Complt at ¶ 3)

## POINT III

### THE COMPLAINT SATISFIES THE PLEADING REQUIREMENTS FOR PLAINTIFF'S CLAIMS AGAINST THE OFFICER INDIVIDUAL DEFENDANTS AND THE BOARD INDIVIDUAL DEFENDANT

Defendants devote significant part of their Motion arguing that claims against the Individual Defendants should be dismissed because of a purported lack of personal involvement and intent. Defendants' efforts are unavailing because, among other reasons, the necessary personal involvement and intent required at the pleading stage is more than adequately satisfied. (MTD at pp. 15 -20) (See Compl. ¶¶ 47, 52, 53, 60, 63, 71, 72, 73 75, 78, 79, 82, 83-87 91, 93, 95, 96, 97, 100, 101, 113 to 116, 119.)

> The Second Circuit held that:
>
> The personal involvement of a supervisor may be established by showing that he (1) directly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated.
>
> As set forth in Iqbal v. Hasty, 490 F.3d 143,152 (2d Cir. 2007) cert. granted *sub nom*

Ashcroft v. Iqbal, 128 S. Ct. 2931 (2008). Additionally, although pled in the Complaint, intent is not required to establish individual liability.  Liability on an individual in a supervisory position "may be imposed when an official has actual or constructive notice of unconstitutional practices and demonstrates 'gross negligence' or 'deliberate indifference' by failing to act.") Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989).

The Complaint sufficiently pleads personal involvement against each of the Defendants including the Director Defendants who, *inter alia*, failed to take corrective action.  (See Compl. at ¶¶ 47, 52, 53, 113 to 116, 119.)  Case decisions relied upon by Defendants in their own memo of law confirm as much.  Specifically, Littlejohn vs. City of New York, 795 F.3d 297, 314 (2d Cir. 2015) (MTD at p. 3, FN 1) states that "personal involvement under §§ 1981 and 1983  can be

established by showing that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

Accordingly, any single one of these five prongs constitute "personal involvement," and at minimum four of the five have been sufficiently plead in the Complaint.  For Defendants to completely ignore these factors while arguing for dismissal defies credulity.  Even under the more exacting standard of summary judgment motion decisions that Defendants' Motion primarily relies upon, courts apply these factors and deny defendants' requests for dismissal based upon a claimed lack of personal involvement.  For example, in Johnson v. Newburgh Enlarged School Dist., 239 F. 3d 246 (2nd Cir. 2001), the Second Circuit held that a triable issue of fact existed because "a jury could find the Supervisors personally involved in the unconstitutional deprivation on the basis that they were either grossly negligent in supervising [a co-defendant] or that they exhibited deliberate indifference to the [plaintiff's] rights by failing to act on information that unconstitutional acts were occurring."

Defendants attempt to dismiss the aiding and abetting claims is also misplaced.  Indeed, the aider and abettor liability can be extended to supervisors who failed to investigate or take appropriate remedial measures despite being informed about the existence of the alleged discriminatory conduct.  Dillon v. Ned Mgmt., No. 13-CV-2622, 2015 WL 427921 (E.D.N.Y. Feb. 2, 2015) (same).[16]  Here, there can be no question that the Director Defendant inaction is grounds

---

[16] Furthermore, a case cited in Defendants' MTD recognizes aiding and abetting liability may be present where a defendant's "inaction aided and abetted [a] termination.  Hargett v. Metropolitan Transit Authority, 552 F.Supp.2d 393, 408 (S.D.N.Y. 2008)  (MTD at 22) ("plaintiff alleges only that the defendants failed to take an action with respect to his

for aider and abettor liability, as is the discriminatory conduct of Walton and McDade. (Compl. at ¶¶ 60, 63, 79, 82, 97, 100, 101) (Walton & McDade) (Compl. at ¶¶ 47, 52, 53, 113 to 116, 119) (Director Defendants)[17]

**POINT IV**

**PLAINTIFF'S CAUSES OF ACTIONS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES MUST STAND BECAUSE, *INTER ALIA* DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY**

Defendants, apparently not content with the attempts in their Motion directed at the pleadings to hold Plaintiff to the standards of review for summary judgment motions and post-trial motions, questioning the veracity of Plaintiff's allegations, requiring Plaintiff to, among other things, provide "proof" of his allegations, and submitting Defendants own supplemental facts, Defendants now ask the Court to apply a new "heightened pleading requirement" to Plaintiff's claim. (MTD at p. 20) Notwithstanding the wealth of Second Circuit authority regarding qualified immunity, Defendants cite a 1990 Fifth Circuit summary judgment case and claim that a "heightened pleading standard is imposed upon the plaintiff, requiring that the complaint state specific facts sufficient to overcome the qualified immunity defense." (MTD at 20) (citing Nieto v. San Perlita Independent School Dist., 894 F.2d 174 (5th Cir. 1990)). This 1990 Fifth Circuit decision has never been acknowledged in the Second Circuit for that proposition. Neither has the Second Circuit recognized the proposition that a plaintiff's pleading should be held to a higher standard in anticipation of defendants' potential qualified immunity defense.

Defendants then continue their attempts to avoid relevant Second Circuit authority by citing to a 1996 Minnesota State Court of Appeals summary judgment decision in a futile effort to find

---

complaints, without alleging any facts tending to suggest that they were actually required to do so. . .or that their inaction aided and abetted his termination.")

[17] Defendants' assertion that Section 1981 only applies to race discrimination and therefore Plaintiff's gender discrimination claims must be dismissed is unavailing and fails as do their other arguments in Point III of the MTD. (MTD at p. 15)

support their ill-fated argument.  (MTD at 21 (citing Goonewardena v. University of Minnesota, 1996 WL 523797 (Minn.App. Sept. 17, 1996))  Finally, to round things off, Defendants conclude their argument by citing to an Eleventh Circuit decision, but omitting any reference to the 11th Circuit in the case citation.  (MTD at p. 21, citing "GJR Invs., Inc. v. County of Escambia, Florida, 132 F.3d 1359 (1998)."  Defendants' efforts to avoid Second Circuit authority regarding qualified immunity are unavailing.  As stated by the Second Circuit in Mandell v. County of Suffolk, 316 F. 3d 368 (2nd Cir 2003), cited in Plaintiffs' Motion, "retaliatory intent is an element of plaintiff's claim, and we have already noted that plaintiff's evidence of retaliatory animus is sufficient to make defendants' motivation a triable issue of fact [and] [u]ntil that issue is resolved by a factfinder, therefore, the retaliation claim against defendant [] cannot be dismissed on qualified immunity grounds.""[18] Defendants have provided zero dismissal authority to support their argument that qualified immunity protects them.

**POINT V**

## PLAINTIFF PLED VIABLE CLAIMS FOR PUNITIVE DAMAGES WHICH SHOULD BE DETERMINED AT TRIAL

Defendants state that punitive damages may only be recovered against individual public employees in their individual capacities "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Munafo v. Metro. Trans. Auth., 2003 WL 21799913 at 22 (E.D.N.Y., Jan. 22. 2003).  (MTD at 22).  Tellingly, Defendants fail to offer a single case where punitive damages against individuals were dismissed.  Indeed, the "reckless indifference to the federally protected rights of others" in the jury trial case cited by Defendants is precisely the type of

---

[18] See also Caraccilo v. Village of Seneca Falls, 582 F. Supp. 2d 390 (WDNY 2008) (rejecting Defendants sovereign immunity argument based on the contention that the individual Board members could not be held liable for a termination because it was the mayor's sole decision to terminate.)  See also Wallace v. Suffolk County Police Dep't, 396 F. Supp. 2d 251(EDNY 2015)  (denying qualified immunity where Plaintiff has sufficiently alleged conduct by the Individual Defendants that, if proven true, would constitute a violation of his well-established First Amendment rights.)

22

reprehensible conduct Defendants engaged in here and warrant punitive damages.  Contrary to

Defendants position, racial discrimination and retaliation are often subject to punitive damages See

Swinton v. Potomac Corp., 270 F.3d 794, 817-818 (9th Cir. 2001), cert. denied, 535 U.S. 1018, 122

S.Ct. 1609, 152 L.Ed.2d 623 (2002) ( failure to address a pattern of racial slurs and harassment was

sufficiently reprehensible to support a $1 million punitive damage award); Zhang v. Am. Gem

Seafoods, Inc., 339 F.3d 1020 (9th Cir. 2003) ($2.6 million punitive damages award was not

excessive where plaintiff was excluded from management meetings, terminated and

then denied a severance package given to white employees)  Johnson-Klein v. California State

Univ., Fresno, No. 05CECG02645 (Cal. Super. Ct. Dec. 6, 2007). ($19.1 million in damages where

employer retaliated when plaintiff complained about discrimination.); Quinlan v. Curtiss-Wright

Corp., No. L-8976-03 (N.J. Super. Ct. Feb. 13, 2007) (a jury in New Jersey awarded over $9 million

to a female human resource professional who proved she was denied a promotion because of her

gender and later terminated in retaliation for bringing a discrimination lawsuit); Quinby v. WestLB

AG, No. 04-cv-07406 (S.D.N.Y. Nov. 2007) ($2.54 million award even though jury found employer

not liable on discrimination claim; instead, the jury awarded damages on the plaintiff's retaliation

claim); Hunter v. Allis-Chalmers, 797 F.2d 1417, 1425, 41 EPD Par. 36,417 (7th Cir. 1986)

(punitive damages warranted where the defendant had deliberately fired a worker for making well-

founded complaints about persistent acts of racial harassment).

## POINT VI

### PLAINTIFF'S CLAIMS FOR NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION, AND TRAINING SHOULD BE DISMISSED AS TO RIOC AND THE BOARD INDIVIDUAL DEFENDANTS

Notwithstanding Defendants' misleading citation of case decisions, Plaintiff has adequately

pled his claims for negligent hiring, screening, retention, supervision and training.  Defendants'

argument attempting to hide behind sovereign immunity is merely a bootstrapping of their

sovereign immunity defense and fails with the sovereign immunity defense. (MTD at p. 22)

Second, the cases Defendants cite (MTD at p. 22) for the proposition that Board Individual Defendants are not employers do no support Defendants' position in the least. (MTD p. 22 at first full paragraph.) Those non-binding cases with no value as precedent are summary judgement motion decisions that for the most part stand for the proposition that under certain circumstances, and under certain statutory provisions a "Board" either is not a suable entity because it is not a being, incorporated etc. or does not fall within the statutory definition of employer for that particular statute. These cases have nothing to do with whether an individual board member may be sued for the purposes of the negligence claims Defendants challenge in Point VI of their MTD.

Additionally, White v. Pacifica, 973 F.Supp.2d at 375 cited by Defendants squarely contradicts Defendants position regarding who or what qualifies as an "employer" On the very next page after the page cited by Defendants. The Court in White held:

> Under the NYSHRL, [a]n individual qualifies as an "employer" when that individual has an ownership interest in the relevant organization or the "power to do more than carry out personnel decisions made by others. To determine whether a defendant is an "employer" within the meaning of the NYSHRL, the Court examines whether the alleged employer: (1) had the power to hire employees; (2) made the payment of salary or wages to the employee; (3) had the power of dismissal over the employee; and (4) had the power to control the employee's conduct. (internal quotation references and punctuation removed)

Finally, Defendants' argument that an employee acting within the scope of his employment combined with respondeant superior exclude claims of negligent hiring and retention completely ignores that claims maybe pled in the alternative. Because alternative theories of liability may be alleged in a Complaint, Defendants' theory (MTD p. 23 second paragraph) is a non-starter.[19]

---

[19] In addition, as recognized in the Jones decision cited in Plaintiffs own Motion, in Colon v. Coughlin, the Second Circuit held that: The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights by failing to act on information indicating that unconstitutional acts were occurring. 58 F.3d 865, 873 (2d Cir. 1995). Here the Directors Defendants are alleged to have violated the second, third, fourth and fifth prongs here, each of which standing along, would permit these claims to proceed. (See Cmplt at ¶¶ 47, 52, 53, 113 to 116, 119.)

## POINT VII

**SHOULD THE COURT GRANT ANY PART OF DEFENDANTS' MOTION AND DISMISS ANY CAUSE OF ACTION OR DEFENDANT, OR FIND THAT SUBJECT MATTER JURISDICTION IS LACKING, PLAINTIFF RESPECTFULLY SUBMITS THAT ANY SUCH DISMISSAL SHOULD BE WITHOUT PREJUDICE AND WITH LEAVE TO RE-PLEAD**

Prior to filing the instant Motion, Defendants filed a 3-page pre-motion letter, listing basis such as the Complaint fails to plead sufficient facts for all claims and notifying the Court that it may later come up with additional motion basis. Defendants were granted permission to file the MTD without a pre-motion conference. Because Defendants pre-motion letter included broad-sweeping and vague motion basis and notified the Court and Plaintiff that Defendants may raise even additional basis not specified in their pre-motion letter, any potential efficiency benefit that could have been had by amending the Complaint prior to Defendants filing their MTD was lost. Plaintiff is able to amend the Complaint with additional factual allegations, which he respectfully submits will cure any potential pleading omission with regard to his claims and Defendants' defenses, including the sovereign immunity defenses and qualified immunity. Accordingly, should the Court grant any part of Defendants' motion and dismiss any cause of action or Defendant, or find that subject matter jurisdiction is lacking, Plaintiff respectfully submits that any such dismissal should be without prejudice and with leave to re-plead.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants Motion to Dismiss the Complaint in its entirety, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
      September 12, 2016

                                       Respectfully submitted,
                                       *Attorney for Plaintiff*

                           By: _____/s/_____ .
                                   Anthony Rotondi
                                   5 Columbus Circle, Suite 800
                                   New York, NY 10019
                                   Tel: 212-709-8340
                                   ajr@ajrotondi.com