| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | USDC SDNY<br>DOCUMENT ELECTRONICALLY FILED<br>DOC#: _____<br>DATE FILED: 3-28-17 |

DONALD LEWIS,

                      Plaintiff,

-against-

ROOSEVELT ISLAND OPERATING CORPORATION, et al.,

                      Defendants.

16-cv-03071 (ALC) (SN)

**OPINION AND ORDER**

ANDREW L. CARTER, JR., United States District Judge:

    Plaintiff Donald Lewis brings this suit against Defendants Roosevelt Island Operating Corporation and certain of its executives and members of its Board of Directors. He alleges that he was subject to discrimination on the basis of his race and gender, and that his employment was terminated for retaliatory reasons in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981; 42 U.S.C. § 1983; the New York State Human Rights Law; the New York City Human Rights Law; and New York common law. Defendants have moved to dismiss the Complaint in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, Defendants' motion is granted in part and denied in part.

## BACKGROUND

### I. Factual Background

    The following facts are taken from the allegations contained in the Complaint, and are presumed to be true for purposes of this motion to dismiss. ECF No. 4 ("Compl.").

    Plaintiff, an African-American man, served as Defendant Roosevelt Island Operating Corporation's ("RIOC") Vice President and General Counsel from October 31, 2011 through April 24, 2015. Compl. ¶¶ 15, 33. He also served as the Acting President and Chief Executive Officer from September 2012 to May 2013, and briefly fulfilled the duties of the Vice President

of Operations. *Id.* ¶ 33. Plaintiff consistently received positive reviews and was given a performance-based salary increase two weeks prior to his employment termination. *Id.* ¶¶ 34-35.

Plaintiff explains that things began to change in May 2013 when RIOC hired Charlene Indelicato as its new President and Chief Executive Officer. *Id.* ¶¶ 17, 61. Indelicato, a white woman, was the subject of two prior discrimination lawsuits resulting from her previous employment, at least one of which was the subject of media coverage. *Id.* ¶¶ 61-62. Plaintiff alleges that Indelicato continued the same course of behavior at RIOC. He alleges that Indelicato, together with Frances Walton, whom Indelicato brought in as RIOC's Chief Financial Officer, and Claudia McDade, RIOC's Director of Human Resources, created an environment that was hostile to RIOC's male and black employees, including Plaintiff. *Id.* ¶¶ 18-19, 63.

In particular, contrary to her behavior towards white and female employees, Indelicato frequently would "yell, scream and curse" at Plaintiff when he asked "legitimate questions" and subject him to the silent treatment for days at a time. *Id.* ¶¶ 73-75, 99. Indelicato further made Plaintiff's job challenging or impossible by refusing to provide additional staffing in the legal department, cutting the legal department's budget, excluding Plaintiff from meetings, and keeping important information from him. *Id.* ¶¶ 77, 97-98, 100-01. She also made comments regarding "(i) Plaintiff's skin color/complexion; (ii) Blacks and Caribbeans; and (iii) behaviors of 'ethnic people,'" including offensive comments about other black RIOC employees. *Id.* ¶¶ 75, 78. Apparently taking their cues from Indelicato, Walton and McDade also made numerous offensive comments about black RIOC employees and black people, in general. *Id.* ¶¶ 79-81.

Plaintiff alleges that, in March and April of 2015, he raised concerns with certain members of the RIOC Board of Directors regarding Indelicato and the discriminatory and hostile

2

work environment she created as well as her "questionable" salary activity. *Id.* ¶¶ 55, 88-89. During the relevant time period, the RIOC Board consisted of Michael Shinozaki, Howard Polivy, Margaret Smith, David Kraut, Katherine Teets Grimm, Fay Freyer Christian, Darryl Towns, and Mary Beth Labate (together, the "Director Defendants," and with Indelicato, McDade, and Wade, the "Individual Defendants"). *Id.* ¶¶ 21-29.

Indelicato became aware of Plaintiff's complaints to the Board and terminated Plaintiff's employment shortly thereafter. *Id.* ¶¶ 38, 56. Plaintiff alleges that he received an email from Indelicato on April 24, 2015 falsely stating that the Board had decided to ask him to resign and giving him three hours to do so or face termination. *Id.* ¶¶ 41, 45. After receiving this email from Indelicato, Plaintiff contacted the Director Defendants, all of whom expressed surprise and concern that his employment had been terminated and stated that the Board had not been involved in the decision. *Id.* ¶¶ 42-44, 48-50. Plaintiff contends that, under the RIOC bylaws, he could only be terminated by a vote of the majority of the Board. *Id.* ¶ 39. Nevertheless, none of the Director Defendants took any steps to undo Indelicato's action. *Id.* ¶¶ 47, 52-53, 112-15. Plaintiff was replaced as General Counsel by a white woman. *Id.* ¶ 65. As a result of Plaintiff's termination and Indelicato's other employment decisions, RIOC's "Main Office" has become considerably more female and white. *Id.* ¶¶ 67-70.

After his termination, counsel for Defendants admitted that Plaintiff's termination had been retaliatory. *Id.* ¶ 57. Moreover, McDade—and perhaps others—"disseminated malicious pre-textual fabrications concerning Plaintiff and his tenure at RIOC," and Defendants conspicuously changed the lock on his office door, leading to the impression that Plaintiff had engaged in some sort of wrongdoing. *Id.* ¶¶ 58-60. Defendants also denied Plaintiff an exit interview and a severance package. *Id.* ¶¶ 53, 91.

## II. Procedural Background

Plaintiff filed his complaint on May 4, 2016. ECF No. 4. In it, he alleges thirteen causes of action. Plaintiff alleges that he was subject to race and gender discrimination, a hostile work environment, and retaliation in violation of Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). He further alleges that all Defendants other than RIOC are liable for aiding and abetting these violations contrary to the NYCHRL, and that RIOC and the Director Defendants are liable for negligent hiring, screening, supervision, and training.

Defendants moved to dismiss the Complaint. ECF Nos. 56 ("Defs' Motion"), 57 ("Defs' Memo."). In their motion, they argue that all of the claims, except for those under Title VII, must be dismissed against RIOC and the Individual Defendants in their official capacities under the doctrine of sovereign immunity. They further argue that many of Plaintiff's causes of action fail to state a claim. Finally, they argue that the claims against the Individual Defendants in their individual capacities should be dismissed because they are subject to qualified immunity and because the Complaint otherwise fails to allege that they were personally involved in the alleged violations of Plaintiff's rights. Plaintiff filed his opposition to the motion and Defendants submitted a reply. ECF No. 73 ("Pl's Memo."); ECF No. 80 ("Defs' Reply"). Accordingly, the Court considers the motion fully submitted.

## LEGAL STANDARD

### I. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When challenged, a plaintiff must prove by a preponderance of the evidence that subject matter jurisdiction exists. *Id.* A court considering a

4

motion to dismiss for lack of subject matter jurisdiction construes all ambiguities and draws all reasonable inferences in favor of the plaintiff. *Id.* However, unlike with a Rule 12(b)(6) motion, when considering a Rule 12(b)(1) motion, "a district court . . . may refer to evidence outside the pleadings." *Id.*

## II.     Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

I.   **Sovereign Immunity**

Defendants first argue that RIOC, its Board of Directors, and the Individual Defendants sued in their official capacities are immune from suit under the Eleventh Amendment, and therefore all claims except those asserted under Title VII should be dismissed for lack of subject matter jurisdiction. Plaintiff does not argue that there has been a waiver of sovereign immunity or congressional abrogation, instead arguing that Defendants are not an "arm of the state" entitled to sovereign immunity.[1] For the reasons that follow, the Court agrees with its fellow district courts that RIOC, its Board, executives, and directors are entitled to sovereign immunity, and all but the Title VII claims against them in their official capacities therefore are dismissed.

The question here centers on whether Defendants are properly considered the "State" for purposes of sovereign immunity. The Second Circuit has established a two-part test to determine whether an entity is "an arm of the State." First, the court evaluates the "*Feeney* factors":

> (1) how the entity is referred to in the documents that created it;
> (2) how the governing members of the entity are appointed;
> (3) how the entity is funded;
> (4) whether the entity's function is traditionally one of local or state government;
> (5) whether the state has a veto power over the entity's actions; and
> (6) whether the entity's obligations are binding upon the state.

*Mancuso v. N.Y. State Thruway Auth.*, 86 F.3d 289, 293 (2d Cir. 1996) (citing *Feeney v. Port Auth. Trans-Hudson Corp.*, 873 F.2d 628, 630-31 (2d Cir. 1989)). If this first inquiry is

---

[1] The Eleventh Amendment bars federal suit against the states and their agencies except where the state has waived its sovereign immunity or Congress has abrogated it explicitly. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 97-100 (1984). There is no clear abrogation of sovereign immunity in § 1981 or § 1983. *Wang v. Office of Prof'l Med. Conduct, N.Y.*, 354 F. App'x 459, 460 (2d Cir. 2009) (§ 1981); *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (§ 1983); *Bland v. New York*, 263 F. Supp. 2d 526, 534 (E.D.N.Y. 2003) (§ 1981 and § 1983). Nor has New York State consented to be sued in federal court under the NYSHRL. *Dimps v. N.Y. State Office of Mental Health*, 777 F. Supp. 2d 659, 661-62 (S.D.N.Y. 2011). Similarly, the Court of Appeals for the Second Circuit has confirmed that New York City cannot abrogate New York State's immunity nor has the State consented to suit under the NYCHRL. *Feingold*, 366 F.3d at 149.

inconclusive, the court then considers whether allowing the defendant to be sued in federal court could "threaten the integrity of the state" and "expose the state treasury to risk." *Id.* (citing *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30 (1994)).

In applying the *Feeney* factors here, the Court is persuaded by the analysis of the issue in *Chafetz v. Roosevelt Island Operating Corp.*, No. 97-cv-0761 (NRB), 2000 WL 1277337 (S.D.N.Y. Sept. 8, 2000), and followed in *Jones v. Roosevelt Island Operating Corp.*, No. 13-cv-2226 (JSR), 2013 WL 6504428 (S.D.N.Y. Dec. 11, 2013). In *Chafetz*, the district court reasoned that, although some of the factors weighed against immunity for RIOC, the balance of the *Feeney* factors supported finding that RIOC was immune from suit as an arm of the State. *Chafetz*, 2000 WL 1277337, at *4. Plaintiff only takes issue with the *Chafetz* court's analysis of the third and sixth *Feeney* factors.

On the first factor, the district court in *Chafetz* noted that the New York State Legislature referred to RIOC as "a political subdivision of New York State" and accorded RIOC some traditional state powers. *Id.* at *3. The second factor also weighs in favor of sovereign immunity because the Governor appoints the RIOC Board members, two of whom are members of state government, serving *ex officio*. *Id.* Skipping ahead to the fourth factor, *Chafetz* found that RIOC's functions appear to be those more traditionally belonging to local government. *Id.* at *4. The fifth factor also weighs slightly against immunity because the State does not have formal veto power over RIOC's actions, notwithstanding the structural control it exerts by virtue of appointing RIOC's leadership. *Id.*

With respect to the third factor—RIOC's funding—Plaintiff notes that, in public statements, RIOC has asserted that it runs self-sufficiently without funding from New York City or the State, and argues that the courts in *Chafetz* and *Jones* failed to consider this fact. Pl's

7

Memo. at 8-9. In *Chafetz*, the court explained that, while "RIOC is structured to be dependent on state funding," it "successfully raises most of its funds from a variety of sources." 2000 WL 1277337, at *3. However, it remained "unclear as to whether RIOC has actually received appropriations from the State in recent years." *Id.* While Plaintiff has created a better record here than in *Chafetz* that RIOC is, in fact, self-sufficient, the shift of this single factor away from immunity does not end the inquiry.

On the sixth factor, Plaintiff is wrong that the appearance of private counsel, rather than the New York State Attorney General, on behalf of Defendants "strongly suggests" the State's lack of indemnification obligations. Pl's Memo. at 10. RIOC's enacting legislation provides that the State must indemnify RIOC and its "officers, directors and employees" from liability arising out of the "development, management or operation of Roosevelt Island." N.Y. Unconsol. Law § 6392(a)(1). In *Chafetz*, the court found that the plaintiff's claim, which arose out of his employment by RIOC, "concerned the 'management' of Roosevelt Island." 2000 WL 1277337, at *4. The Court agrees. Moreover, an entity's decision to purchase liability insurance—to the extent that is what the appearance of private counsel here indicates—does not impact the scope of its sovereign immunity. It is well-established that, on the question of a state's obligation to pay a potential civil judgment, "it is irrelevant whether the State has insurance or is indemnified." *Jones*, 2013 WL 6504428, at *3 (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997) and *Walker v. City of Waterbury*, 253 F. App'x 58, 61 (2d Cir. 2007)).

Based on this analysis, the *Feeney* factors are evenly split. Accordingly, the Court moves to the second step, and finds that for the same reasons discussed in the first, second, and sixth *Feeney* factors, allowing RIOC and its executives and directors to be sued here "would expose the state treasury to risk" and "threaten the integrity of the state." *Mancuso*, 86 F.3d at 293.

Therefore, RIOC, its Board, executives, and directors are an arm of the state subject to sovereign immunity. Only Plaintiff's Title VII claims can remain against RIOC, the Board, and the Individual Defendants in their official capacities.[2] Plaintiff's other causes of action, to the extent otherwise viable, survive against the Individual Defendants in their individual capacities only.

## II.   Race and Gender Discrimination

Defendants next argue that Plaintiff has failed to state a claim for race or gender discrimination. Defs' Memo. at 6-10. In relevant part, Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).[3] To state a claim for discrimination, a plaintiff must allege "(1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

The parties do not dispute that Plaintiff is a member of protected classes (black and male), was qualified for his position as General Counsel of RIOC, and suffered an adverse employment action (his termination). Instead, Defendants argue that Plaintiff has failed to allege facts giving rise to an inference of discriminatory intent. However, to survive a motion to

---

[2] Plaintiff's Title VII claims are also dismissed against the Individual Defendants because individuals are not subject to liability for violations of Title VII. *See Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004).

[3] The standard for discrimination under Title VII, § 1981, § 1983, and the NYSHRL is the same. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 88 (2d Cir. 2015) (Title VII and § 1983); *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (Title VII, § 1981, and NYSHRL); *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (Title VII, §1981, and §1983). The NYCHRL has a more liberal standard. *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).

dismiss, a plaintiff need only allege "facts supporting a minimal plausible inference of discriminatory intent." *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016). The Court of Appeals recently emphasized the low bar that this entails. *See id.* at n.8 (collecting cases in which it vacated dismissals on appeal). "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

Here, Plaintiff alleges a number of facts that, taken together, give rise to a plausible inference that racially discriminatory intent motivated his termination. His allegations regarding gender-based discrimination are thinner, but still suffice at this early stage. Among other allegations, Plaintiff asserts that Indelicato made several offensive comments regarding Plaintiff's skin color, the black employees at RIOC, and black people, in general. Compl. ¶¶ 75, 78-79. Indelicato allegedly required Plaintiff to participate in interactions with black employees and Board members with whom Plaintiff otherwise had little or no involvement under circumstances that suggested to Plaintiff he was included only because he is black. *Id.* ¶¶ 93-96. Plaintiff further alleges that, after Indelicato terminated his employment, he was replaced by someone outside of his protected classes, a white woman, and that the terms of his severance were less favorable than those given to white RIOC executives upon their departure. *Id.* ¶¶ 37, 65, 91. Finally, he notes that other black employees at RIOC were treated poorly by Indelicato, Walton, and McDade, *id.* ¶¶ 67, 79-81, which, contrary to Defendants' contention, "may be highly relevant to an individual disparate treatment or to a disparate impact claim." *Chin v. Port*

*Auth. of N.Y. & N.J.*, 685 F.3d 135, 150 (2d Cir. 2012). Accordingly, Defendants' motion to dismiss Plaintiff's gender and race discrimination claims is denied, except as to Plaintiff's claim for gender discrimination under § 1981 because only discrimination on the basis of race is cognizable under this provision. *See Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998) (citing *Runyon v. McCrary*, 427 U.S. 160, 167 (1976)).[4]

### III. Hostile Work Environment

To survive a motion to dismiss a claim for hostile work environment, "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).[5] While the hostile work environment must be motivated by the plaintiff's membership in a protected class, conduct that is facially neutral can support a hostile work environment claim where there also is overt hostility on the basis of the employee's protected status. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547-48 (2d Cir. 2010). In evaluating whether the circumstances suffice to find a hostile work environment, the Court of Appeals has "repeatedly cautioned against setting the bar too high." *Patane*, 508 F.3d at 113 (quoting *Terry*, 336 F.3d at 148) (internal quotation marks omitted).

---

[4] The decisions cited by Defendants for the proposition that Plaintiff has made only conclusory allegations of discriminatory intent are readily distinguishable and barely merit mention given Plaintiff's detailed allegations. *See* Defs' Reply at 9. It suffices to say that, to the extent any of the cases involved *any* racially-charged statements, the comments alleged were either fewer in number, not made by the relevant decision makers, or not close in time to the adverse employment action.

[5] The standard for hostile work environment claims under Title VII, § 1981, § 1983, and the NYSHRL is the same. *Summa v. Hofstra Univ.*, 708 F.3d 115, 123-24 (2d Cir. 2013) (Title VII and NYSHRL); *Patterson*, 375 F.3d at 225 (Title VII, § 1981, and § 1983). The same provision of the NYCHRL governs claims for discrimination and hostile work environment, and entails a more liberal standard than Title VII. *Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 449-50 (E.D.N.Y. 2013).

11

Here, in addition to the numerous racially-charged statements detailed in the previous section, Plaintiff also describes a pattern of facially neutral comments and practices by his supervisor, Indelicato, that made his job challenging and, in some instances, impossible, and undermined his authority within RIOC. He alleges that "it was not uncommon for Defendant Indelicato to yell, scream and curse in response to legitimate questions from Plaintiff." Compl. ¶ 73; *see also id.* ¶¶ 75, 99. In the opposite direction, Indelicato also allegedly subjected Plaintiff to the "silent treatment" for days at a time and wrongly excluded him from meetings. *Id.* ¶¶ 74, 100. Additionally, Indelicato, Walton, and McDade withheld information and documents from Plaintiff that he needed to work. *Id.* ¶¶ 77, 101. Taken together, and conscious of the Court of Appeals' admonition not to set the bar too high on a motion to dismiss, the Court finds that Plaintiff has stated a claim for hostile work environment.

## IV. Retaliation

Defendants also move to dismiss Plaintiff's retaliation claims. To state a claim for retaliation, a plaintiff must allege that "(1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90.[6] Unlike in claims of direct discrimination, a plaintiff asserting a retaliation claim must allege facts leading to the plausible inference that "retaliation was a 'but-for' cause of the employer's adverse action." *Id.* (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)). Defendants make three arguments in support of dismissal, each of which is quickly refuted.

---

[6] The standard for retaliation under Title VII, § 1981, § 1983, and the NYSHRL is the same. *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 271 n.3 (2d Cir. 2016) (Title VII and NYSHRL); *Vega*, 801 F.3d at 91 (Title VII and § 1983); *Littlejohn*, 795 F.3d at 315 (Title VII and § 1981). As with direct discrimination claims, NYCHRL retaliation claims also have a broader application than Title VII. *Russo*, 972 F. Supp. 2d at 455. A plaintiff need only show that the employer's conduct was "reasonably likely to deter a person from engaging in protected activity." N.Y.C. Admin. Code § 8-107(7).

12

First, Defendants argue that Plaintiff has failed to allege with sufficient detail the circumstances surrounding his protected conduct and termination. Defs' Memo. at 13-14. This argument seems to be motivated by their disbelief regarding the truth of Plaintiff's allegations. However, there is no requirement that a plaintiff provide "proof" of the veracity of the allegations in a complaint. Rather, the question is whether, assuming the truth of the allegations, the plaintiff has stated a claim. Here, it suffices that Plaintiff alleges that, in March and April of 2015, he reported to the Director Defendants his concerns regarding Indelicato's discriminatory conduct towards him and others at RIOC and that he was terminated shortly after engaging in that protected activity. Compl. ¶¶ 55-56, 110.

Second, Defendants argue that Plaintiff has failed to plead facts establishing that Indelicato was aware Plaintiff reported his concerns. Defs' Memo. at 14. Again, Defendants' argument seems to be motivated by a belief that Plaintiff is lying, which is not a basis for a motion to dismiss. Plaintiff alleges that his termination occurred "shortly after" Indelicato learned about Defendants' reports. Compl. ¶ 38. "In or around mid-April," Indelicato was overheard complaining about Plaintiff's decision to go to the Board, *id.* ¶ 56, and Plaintiff was terminated before the end of the month. *Id.* ¶ 33.[7] Moreover, Plaintiff alleges that, through counsel, Defendants admitted that Plaintiff's termination was retaliatory. *Id.* ¶ 57.

Third and finally, Defendants assert that Plaintiff has not established a causal connection between his protected activity and his termination. Defs' Memo. at 15. It is well-established

---

[7] Defendants' argument that Indelicato's overheard statements are inadmissible hearsay insufficient to defeat a motion to dismiss is without merit. First, it is not clear that the statements are, in fact, hearsay. That is, based on the wording of the sentence, it is not clear that Plaintiff, himself, did not overhear Indelicato's comments. *See* Compl. ¶ 56. If Plaintiff overheard the statements, there is no hearsay, as Plaintiff is not offering Indelicato's statements for the truth of the matter asserted, merely that she said anything at all. If Plaintiff is relying on another person relaying Indelicato's comments to him, they may be hearsay, but the ultimate admissibility of evidence included in a complaint is immaterial when deciding a motion to dismiss. *See In re Palermo*, No. 08-cv-7421 (RPP), 2011 WL 446209, at *5 (S.D.N.Y. Feb. 7, 2011).

that "retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." *Vega*, 801 F.3d at 90. While the Second Circuit Court of Appeals has declined to draw "a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," Plaintiff's allegations are well within the window in which a causal relationship can be inferred. *Littlejohn*, 795 F.3d at 319 (citation omitted); *see, e.g., Vega*, 801 F.3d at 92 (finding two to three months sufficiently close); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (noting that five months may not be too attenuated). Plaintiff alleges that he made his reports to the Board in March and April of 2015 and was terminated on April 24, 2015. Compl. ¶¶ 33, 55, 110. Assuming Plaintiff's factual support for the causal connection between his protected activity and his termination was based solely on their temporal proximity to each other—which it is not—the time between his protected activity and his termination is sufficiently close for the Court to find that Plaintiff alleged that retaliation was a "but for" cause of his termination.

## V.     Liability of the Individual Defendants

Defendants make two arguments regarding liability of the Individual Defendants in their individual capacities. First, they argue that none of the Individual Defendants was personally involved in the alleged discriminatory or retaliatory conduct, and therefore cannot be liable. Defs' Memo. 15-20. Second, they argue that, even if the Individual Defendants were personally involved, they are entitled to qualified immunity. *Id.* at 20-21. For the reasons described, both of these arguments fail in large part.

First, to hold an individual liable for a violation of § 1981 or § 1983, the plaintiff must show that the individual was "personally involved in the alleged deprivation." *Littlejohn*, 795

F.3d at 314 (citation and internal quotation marks omitted). A plaintiff may establish personal involvement by showing:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* (citation omitted). Once shown, with respect to supervisory liability in particular, "a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation" and, "in the § 1983 context, a plaintiff must establish that a supervisor's behavior constituted intentional discrimination on the basis of a protected characteristic." *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014).

The NYSHRL and NYCHRL also require personal involvement by the defendant, which includes aiding and abetting the alleged violation. *See* N.Y. Exec. L. § 296(6); N.Y.C. Admin. Code § 8-107(6); *Feingold*, 366 F.3d at 157-58.

Taking each of the Individual Defendants in turn, there can be no question that Indelicato was personally involved in the alleged discriminatory and retaliatory conduct. Indeed, she is the primary actor throughout the Complaint. Defendants' argument with respect to Indelicato largely relies on the assumption that Plaintiff has failed to state a claim for discrimination, hostile work environment, and retaliation, which arguments the Court has rejected already.

Walton and McDade present a closer question. Neither Walton nor McDade were Indelicato's supervisors; they were her subordinates. Accordingly, they cannot be held liable for Indelicato's violations under a supervisory liability theory. However, they may be held liable under § 1981 or § 1983 to the extent their own conduct violated Plaintiff's constitutional rights

or under the NYSHRL or NYCHRL for aiding and abetting Indelicato. Plaintiff has not alleged sufficient conduct by Walton or McDade to support an inference that they intentionally discriminated or retaliated against him. While Plaintiff asserts that Walton and McDade "acted in concert" with Indelicato to undermine and discriminate against Plaintiff, the Complaint is almost entirely devoid of any actions by either Walton or McDade, and includes no allegations regarding their role in Plaintiff's termination. Compl. ¶ 63; *see Littlejohn*, 795 F.3d at 320 (dismissing claims against individuals where they did not participate in decision to demote plaintiff). Therefore, Plaintiff's gender and race discrimination and retaliation claims are dismissed as to Walton and McDade.

The Complaint does contain facts sufficient to find that Walton and McDade either themselves contributed to Plaintiff's hostile work environment or aided and abetted Indelicato to that end. Plaintiff alleges that Walton and McDade made offensive comments about black employees at RIOC, albeit not about or to him. Compl. ¶¶ 79-81. Plaintiff also alleges that Walton and McDade participated with Indelicato in making Plaintiff's job more difficult. *Id.* ¶¶ 98-101; *see Raspardo*, 770 F.3d at 115 n.21 ("Jointly planned or perpetrated acts of harassment, of course, may be attributed to each of the defendants.").

With respect to the Director Defendants, Plaintiff's allegations that he informed them about Indelicato's discriminatory behavior prior to his termination, then informed them that he believed his termination was motivated by discriminatory and retaliatory animus, but that the Directors failed to take any steps to remedy either situation, establishes several of the ways in which a plaintiff can establish personal involvement by a supervisor. Compl. ¶¶ 48-53, 55, 110; *cf. Raspardo*, 770 F.3d at 124-25 (plaintiff did not report sexual harassment to supervisor until after perpetrator was placed on administrative leave and supervisor then conducted investigation

and further reprimanded perpetrator); *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (upholding summary judgment in favor of supervisor who investigated plaintiff's claim of discrimination). Additionally, the Directors' decision not to reverse Plaintiff's termination—which Plaintiff notes was done without proper Board approval in the first instance—allowed Plaintiff's constitutional deprivation to remain in effect. Compl. ¶¶ 39, 52. Accordingly, the Complaint contains sufficient facts to support an inference that the Director Defendants intentionally discriminated against Plaintiff by failing to remedy Indelicato's wrongs despite being put on notice.

Second, none of the Individual Defendants with personal involvement are otherwise entitled to qualified immunity. Public officials sued in their individual capacity are entitled to qualified immunity if "(1) a constitutional right was [not] violated or (2) the right was not clearly established [at the time of the violation]." *Raspardo*, 770 F.3d at 113 (citation and internal quotation marks omitted, alterations in original). There is no question that the right to be free from the prototypical racial- and gender-based discrimination Plaintiff details was clearly established during the relevant time period, and Defendants do not argue otherwise. *See, e.g., Demoret v. Zegarelli*, 451 F.3d 140, 150-52 (2d Cir. 2006) (denying qualified immunity for disparate treatment based on gender); *Hill v. Taconic Dev. Disabilities Servs. Office*, 82 F. App'x 254, 256 (2d Cir. 2003) ("[D]efendants cannot claim that it was objectively reasonable for them to believe that the deliberate creation of a racially hostile work environment or supervisors' failure to remedy it did not violate clearly established federal law."); *Jemmott v. Coughlin*, 85 F.3d 61, 68 (2d Cir. 1996) (denying qualified immunity to supervisors on basis of race-based hostile work environment). Rather, Defendants' qualified immunity argument is based on the

17

contention that the Complaint does not include facts establishing the underlying constitutional violations, which the Court has rejected.

## VI. Negligent Hiring, Screening, Retention, Supervision, and Training Claim

Defendants also argue that Plaintiff's New York state law claim for negligent hiring, screening, retention, supervision, and training against RIOC and the Director Defendants should be dismissed. Defs' Memo. at 22-24. As a preliminary matter, RIOC and the Director Defendants in their official capacities are entitled to sovereign immunity on this claim. Accordingly, only the claim against the Director Defendants in their individual capacities is at issue here.

A claim for negligent hiring, training, and supervision requires a plaintiff to show that the individual tortfeasors were not acting within the scope of their employment. *See Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 521-22 (S.D.N.Y. 2015) (collecting cases). While Plaintiff responds that he is entitled to plead inconsistent legal theories, as in *Schoolcraft*, that is not what Plaintiff has alleged. Pl's Memo. at 24. The Complaint explicitly states that Indelicato, Wade, and McDade were acting within the scope of their employment. Compl. ¶¶ 17-19. Moreover, by moving to dismiss on this basis, Defendants are effectively conceding that Indelicato, Wade, and McDade were acting within the scope of their employment. "[W]here a defendant employer admits its employees were acting within the scope of their employment, an employer may not be held liable for negligent hiring, training, and retention as a matter of law." *Schoolcraft*, 103 F. Supp. 3d at 522 (citation and internal quotation marks omitted, alteration in original). However, this claim is dismissed without prejudice. If, during the course of discovery or in subsequent motion practice, Defendants claim that Indelicato, Wade, and McDade were not

acting within the scope of their employment, Plaintiff may be entitled to reinstate this claim or argue that Defendants are estopped from taking that inconsistent position.[8]

## VII. Punitive Damages

Finally, Defendants argue that Plaintiff's request for punitive damages should be stricken as against RIOC because it is a public benefit corporation and as against the Individual Defendants given Plaintiff's failure to establish that they acted with discriminatory intent. Defs' Memo. at 22. For the reasons discussed above, the Court declines to strike Plaintiff's request for punitive damages against the Individual Defendants. However, as Plaintiff appears to concede, *see* Pl's Memo. at 22-23, punitive damages are not available "against government agencies or political subdivisions" like RIOC. *Hargett v. Metro. Transit Auth.*, 552 F. Supp. 2d 393, 404 (S.D.N.Y. 2008) (citing *Kolstad v. Am. Dental Assoc.*, 527 U.S. 526, 534 (1999)); *see also* N.Y. Unconsol. Law § 6387(1) (defining RIOC as a public benefit corporation).

## CONCLUSION

For the reasons set forth above, Plaintiff's § 1981, § 1983, NYSHRL, NYCHRL, and common law claims are dismissed with prejudice against Defendants RIOC, the Board of Directors, and the Individual Defendants in their official capacities for lack of subject matter jurisdiction. Plaintiff's § 1981 claims, as related to gender discrimination, also are dismissed with prejudice. Plaintiff's claims for discrimination, retaliation, and hostile work environment under Title VII may proceed against RIOC and the Board. Additionally, Plaintiff's claims under

---

[8] Defendants also argue that the Director Defendants were not "employers" as is required to state a claim for negligent hiring, training, and supervision. *See Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004). In support of this argument, however, Defendants cite exclusively to decisions involving claims arising under statutes and states' laws not relevant here, making them neither binding nor particularly useful. Additionally, the Court's own research has returned decisions in which claims for negligent hiring and supervision were allowed to proceed against individual board members. *See, e.g., Dooley v. Metro. Jewish Health Sys.*, No. 02-cv-4640 (JG), 2003 WL 22171876, at *11 (E.D.N.Y. July 30, 2003); *Calder v. Planned Cmty. Living, Inc.*, No. 93-cv-8882 (AGS), 1995 WL 456400, at *10 (S.D.N.Y. Aug. 2, 1995).

§ 1981, § 1983, the NYSHRL, and the NYCHRL may proceed against the Individual Defendants in their individual capacities, except as to Walton and McDade as described. Plaintiff's common law claim against the Director Defendants is dismissed without prejudice. Finally, Plaintiff's request for punitive damages against RIOC is stricken.

**SO ORDERED.**

Dated: March 28, 2017
      New York, New York

                              **ANDREW L. CARTER, JR.**
                              **United States District Judge**