**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**DONALD LEWIS,**

                    **Plaintiff,**

        **-against-**

**THE ROOSEVELT ISLAND OPERATING CORPORATION, THE ROOSEVELT ISLAND OPERATING CORPORATION BOARD OF DIRECTORS, CHARLENE M. INDELICATO, CLAUDIA MCDADE, FRANCES A. WALTON, MARGARET SMITH, HOWARD POLIVY, KATHERINE GRIMM, MICHAEL SHINOZAKI, FAY FREYER CHRISTIAN, DARRYL TOWNS, DAVID KRAUT and MARY BETH LABATE in their official and individual capacities,**

                    **Defendants.**

16-CV-03071 (ALC) (SN)

**OPINION AND ORDER**

---

**ANDREW L. CARTER, JR., United States District Judge:**

    Anthony Rotondi, attorney for Plaintiff, has filed a motion for attorneys' fees. For the reasons set forth below, Plaintiff counsel's motion is GRANTED in part and DENIED in part.

## BACKGROUND

    The Court assumes familiarity with the background of this case and summarizes only those facts relevant to this opinion. Plaintiff Donald Lewis filed this action on April 25, 2016, alleging that he was subject to discrimination on the basis of his race and gender and that his employment was terminated for retaliatory reasons in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981 and § 1983, New York State Human Rights Law ("NYSHRL"), New York City Human Rights Law ("NYCHRL"), and New York common law. On March 28, 2017, this Court granted Defendants' motion to dismiss Plaintiff's § 1981, § 1983, NYSHRL, NYCHRL, and common law claims against Defendants RIOC, the Board of Directors and the

1

Individual Defendants in their official capacities and Plaintiff's § 1981 gender-based claims. ECF No. 148. The Court denied the motion otherwise. *Id.*

On April 20, 2017, after eight depositions were taken and before discovery was complete, Defendants served Plaintiff with an Offer of Judgment pursuant to Fed. R. Civ. P. 68. ECF No. 162. According to the Offer, Defendants would pay Plaintiff $180,000 plus all reasonable attorneys' fees, costs, and expenses in an amount to be determined by the Court. *Id.* On May 17, 2017, this Court entered the Order of Judgment. ECF No. 171.

Attorney Rotondi's motion for attorneys' fees was due by July 1, 2017. *Id.* After seeking numerous extensions, on December 23, 2017 Rotondi filed his attorneys' fees motion, seeking $1,678,813 in fees and $28,220.73 in costs, plus reasonable fees expended in litigating the fee motion. ECF No. 185 at 7 ("Pl Mem"). Defendants filed a memorandum of law in opposition on February 12, 2018, asserting that the attorneys' fees should either be denied outright or be adjusted downward and that certain costs were not reimbursable. ECF No. 190 ("Def Opp").

On February 19, 2018, Rotondi sought an extension of time to reply so that the Court could entertain his motion for subpoenas of Defendants' law firms to ascertain information related to their fees and expenses. ECF No. 193. Defendants opposed the request, which this Court construed as a motion to quash the subpoenas. The Court accordingly ordered briefing on this motion. ECF No. 198. Following briefing, this Court granted Defendants' motion to quash the subpoenas. ECF No. 213. Rotondi filed his reply on April 6, 2018. ECF No. 219 ("Pl Reply").

Defendants filed a supplemental reply on April 12, 2018, opposing Rotondi's request for fees incurred in preparing the instant fee application. ECF No. 220 ("Def Supp Reply"). With

2

updated cost estimates reflecting time spent litigating the fee motion, Rotondi now seeks $2,603,816.66 in fees and $30,000.3 in costs. *Id.* at 1.

The Court considers the motion fully submitted.

## STANDARD OF REVIEW

Under 42 U.S.C. § 1988(b), "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs" in a suit under § 1983. The purpose of awarding attorneys' fees in § 1983 cases is "to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting H.R. Rep. No. 94-1558, p. 1 (1976)). Through awarding attorneys' fees, the judicial system "encourage[es] the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *Kerr v. Quinn*, 692 F.2d 875, 877 (2d Cir. 1982).

A court awards attorneys' fees by determining a "presumptively reasonable fee." *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011). A "'reasonable fee' is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). In determining a reasonable fee, "the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007) (quoting *Hensley*, 461 U.S. at 433). Then, in "rare circumstances" a "district court may adjust the lodestar when it 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *Millea v. Metro-North R. Co.*, 658 F.3d 154, 167 (2d Cir. 2011) (quoting *Perdue*, 559 U.S. at 552).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.

## DISCUSSION

## I.    Whether Fee Application Should be Denied Outright Due to Deficiencies

There is no dispute that Plaintiff is a "prevailing party" under the statute. *See Davis v. City of New York*, No. 10–cv-699, 2011 WL 4946243, at *2 (S.D.N.Y. Oct. 18, 2011) (citations omitted) ("The Second Circuit has held that plaintiffs who accept Rule 68 offers of judgment qualify as 'prevailing parties' entitled to attorneys' fees and costs."). The issue is the amount of fees, if any, to which Plaintiff's counsel is entitled.

Defendants argue that this Court should deny the fee application outright on the basis of deficiencies including: (1) failure to submit contemporaneous time records; (2) extreme block billing; (3) vague entries and heavy redactions; and (4) billing for incomplete work or work unrelated to the lawsuit. Rotondi responds that his records are sufficient to entitle him to reasonable attorneys' fees.

The Second Circuit has held that "any attorney … who applies for court-ordered compensation in this Circuit … must document the application with contemporaneous time records … specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). The "failure to do so results in denial of the motion for fees." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992).

So long as an attorney "made contemporaneous entries as the work was completed, and that their billing was based on these contemporaneous records," *Carey* is satisfied. *Cruz v. Local Union No.3, Int'l Bhd. Of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994). Accordingly,

4

reconstructions of contemporaneous records are permissible. *See David v. Sullivan*, 777 F. Supp. 212, 223 (E.D.N.Y. 1991) ("Attorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records satisfy the rationale underlying *Carey* and suffice to permit recovery of attorneys' fees."); *Lenihan v. City of New York*, 640 F. Supp. 822, 824 (S.D.N.Y. 1986) (typewritten transcription of original records satisfies *Carey*).

Here, Rotondi represented that he recorded his time contemporaneously with the tasks performed from his billing software program. Declaration of Anthony Rotondi ("Rotondi Decl") ¶ 13 (ECF 187-1). Rotondi has submitted what appear to be reconstructions of time records rather than contemporaneous records. *See* Rotondi Decl. Ex. QQ. (ECF 187-5). It is not clear from the record whether Rotondi kept contemporaneous time records. Additionally, as discussed below, the Court agrees with Defendants that Rotondi engaged in block billing, submitted vague entries, overused redactions, and overbilled. Nevertheless, Rotondi's entries generally specify the attorney, date, hours expended, and the nature of the work done. *See id.*

Cases cited by Defendants do not suggest that attorneys' fees should be denied here. In *Lewis v. Coughlin* and *Szczepanek v. Dabek*, the courts adjusted the attorneys' fees downwards rather than denying them outright. *See Lewis v. Coughlin*, 801 F.2d 570, 578 (2d. Cir. 1986), *Szczepanek v. Dabek*, No. 10-cv-2459, 2011 WL 846193, at *9 (E.D.N.Y. Mar. 7, 2011), *aff'd*, 465 F. App'x 74 (2d Cir. 2012). In *Toussie v. Cnty. of Suffolk*, the court did deny all attorneys' fees; however there, the Court determined that the fee application clearly evidenced bad faith and that the prevailing party's recovery was *de minimis. Toussie v. Cnty. of Suffolk*, No. 01-cv-6716, 2012 WL3860760, at *6-9 (E.D.N.Y. Sept. 6, 2012). No such factors are present here.

Accordingly, this Court holds that Attorney Rotondi's time records satisfy—albeit barely—*Carey* and suffice to permit recovery of attorneys' fees here.

## II. Reasonable Fees

Next, the Court must determine what fee is "reasonable."

### A. Reasonable Hourly Rate

A reasonable hourly rate is "the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany and Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). In this analysis, a court looks to the "hourly rates employed in the district in which the reviewing court sits" – in this case, the Southern District of New York. *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks omitted). The rates used in this calculation should generally be "current rather than historic hourly rates." *Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1988)).

However, "'a reasonably hourly rate' is not ordinarily ascertained simply by reference to rates awarded in prior cases." *Farbotko v. Clinton Cty. of New York*, 433 F.3d 204, 208 (2d Cir. 2005). This Circuit has cautioned that "[r]ecycling rates awarded in prior cases without considering whether they continue to prevail may create disparity between compensation available under § 1988(b) and compensation available in the marketplace," which "undermines § 1988(b)'s central purpose of attracting competent counsel to public interest litigation." *Id.* at 209.

Instead, a court must engage in "a case-specific inquiry" that contemplates "the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel"; "judicial notice of the rates awarded in prior cases"; "the court's own familiarity with the rates prevailing in the district"; and "evidence proffered by the parties." *Id.* "The size of the firm may

also be considered as a factor in determining the hourly rate, 'primarily due to varying overhead costs.'" *Robinson v. City of New York*, No. 05-cv-9545, 2009 WL 3109846, at *4 (S.D.N.Y. Sept. 29, 2009) (quoting *Cioffi v. New York Cmty. Bank*, 465 F. Supp. 2d 202, 219 (E.D.N.Y. 2006)). The "actual billing arrangement certainly provides a strong indication of what private parties believe is the 'reasonable' fee to be awarded." *Crescent Publ'g Grp., Inc. v. Playboy Enter., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001); *see also Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008) ("[T]he range of rates that plaintiff's counsel actually charge their clients [is] obviously strong evidence of what the market will bear.").

Courts in this Circuit also consider the following nonexclusive *Johnson* factors:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3 (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

Here, Rotondi requests that he be compensated at an hourly rate of $650. Rotondi is a solo practitioner, and the only attorney that represented Plaintiff in this case. Pl Mem at 13. In support of this application, Rotondi submitted declarations from Andrew Multer, who worked with Rotondi as a fellow Assistant Corporation Counsel, and Seth A. Harris, who was an adversary to Rotondi when Rotondi was an Assistant Corporation Counsel in several cases. Rotondi Decl. at Exs. LL, MM (ECF No. 187-4). Rotondi also submitted a past retainer agreement and the actual retainer agreement in this case. *Id.* at Exs. NN (actual agreement), OO (past agreement). Defendants contend that the rate should be no higher than $300 per hour.

As courts in this district have noted, "there may be a range of rates that different counsel command in the marketplace for essentially the same services." *Rozell*, 576 F. Supp. 2d at 544. In its analysis, this Court has considered "*all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees." *See id.* (citing *Arbor Hill*, 522 F.3d at 190).

### *Degree of Success*

Plaintiff has achieved limited success in this "most critical factor" by obtaining a Rule 68 Offer of Judgment in his favor. *See Baird v. Boies, Schiller & Flexner LLP*, 219 F. Supp. 2d 510, 519 (S.D.N.Y. 2002). Plaintiff's recovery of $180,000, though not *de minimis*, is substantially lower than his initial request of over ten million dollars. *See id.* at 523; Declaration of Holly G. Rogers ("Rogers Decl") Ex. A at 3 (ECF No. 191). Further, as discussed below Plaintiff did not secure any "important social benefits" that are not reflected in his monetary damages, such as "important equitable or declaratory relief." *See Baird*, 219 F. Supp. 2d at 520. Indeed, the Offer of Judgment here specifies that it "is not to be construed either as an admission that the Defendants are liable in this action, or that Plaintiff has suffered any damages." ECF 162.

### *Counsel's Skill and Experience*

Next, this Court turns to counsel's experience and qualifications. Rotondi asserts that he is a skilled federal litigator who has been practicing for twenty-three years with "experience [in] governmental relations, labor and employment law." Pl Mem at 10. In support of his assertion, Rotondi refers to his experience working as an Assistant Corporation Counsel at the New York City Law Department. Rotondi Decl. ¶ 14. However, Rotondi worked as an Assistant Corporation Counsel over twenty years ago, while he was a law student and then for a few years immediately after finishing law school. *Id.* ¶¶ 17-18. Next, Rotondi asserts that, as a litigator

with Clearly Gottlieb Stein & Hamilton, Milbank, Tweed, Hadley & McCloy LLP and then as a partner at Howrey LLP, he has handled class action securities litigation, complex commercial litigations, ERISA class actions, "Key Executive" compensation, joint ventures, and merger transactions. *Id.* ¶ 21. He thus lacks specific expertise in civil rights cases.

### Counsel's Routine Rate

Rotondi contends that his hourly billing rate has been at least $1,100 per hour since 2009. *Id.* ¶ 28. However, while the retainer agreements that he submitted provide for a $1,100/hour rate, they been heavily redacted to the point of near-illegibility. *See* Rotondi Decl. Exs. QQ, OO (ECF 187-4). In any event, as Rotondi acknowledges, the "market rate for civil rights litigation services is lower than that for some other areas of practice, particularly those involving more affluent corporate clients." *Brady v. Wal-Mart Stores, Inc.*, No. 03-cv-3843, 2010 WL 4392566 at *4 (E.D.N.Y. Oct. 29, 2010) (citing *Morris v. Eversley*, 343 F. Supp. 2d 234, 247 (S.D.N.Y. 2004)).

### Routine Rate in Relevant Market

This Court further looks to rates awarded to civil rights attorneys in the relevant market. Rotondi cites numerous cases where courts in this District have awarded fees similar to, or higher than, the rates sought here. Specifically, Rotondi points to *Payne v. Kirkland*, No. 14-cv-7098, 2017 WL 5952707, at *4 (S.D.N.Y. Nov. 30, 2017), where this Court stated that "[p]recedent in this District clearly demonstrates that experienced solo civil rights practitioners and civil rights attorneys from small law firms have been awarded hourly rates as high as $550 to $650." Plaintiff also cites other decisions awarding fees ranging from $550 to $700 per hour for experienced solo practitioners or partners. *See, e.g.*, *Merino v. Beverage Plus Am. Corp.*, No. 10-cv-706, 2012 WL 4468182 at *3 (S.D.N.Y. Sept. 25, 2012) (awarding $700 and $450 per hour

for partners); *Abdell v. City of New York*, No. 05-cv-8453, 2015 WL 898974 at *3 (S.D.N.Y. Mar. 2, 2015) (awarding $650 per hour for an experienced solo practitioners); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (awarding $600 per hour for partners and counsel).

Defendants assert that Rotondi's rate should be no more than $300 per hour. They cite cases awarding rates of $300 to $450 for experienced employment discrimination or civil rights attorneys in this District. *See, e.g.*, *Schoolcraft v. City of New York*, No. 10-cv-6005, 2016 WL 4626568 at *7 (S.D.N.Y. Sept. 6, 2016) (awarding $390 per hour for experienced civil rights attorney); *Wright v. City of New York*, No. 16-cv-1397, 2017 WL 4797924 at *4 (S.D.N.Y. Oct. 20, 2017) (awarding $300 per hour to attorney who had litigated over 136 civil rights cases); *DeCastro v. City of New York*, No. 16-cv-3850, 2017 WL 4386372 at *4 (S.D.N.Y. Sept. 20, 2017) (awarding $425 per hour for attorney with s years' experience in civil rights litigation).

Further, Defendants argue that attorneys who received higher hourly rates in the cases relied on by Rotondi were significantly more experienced than him, both generally and with respect to civil rights cases. Defendants additionally offer a PACER record indicating that Rotondi has only appeared in this District in nine cases including this one, and that six out of the nine cases took place during his tenure as an Assistant Corporation Counsel. Rogers Decl Ex. B.

### *Additional Factors*

Rotondi asserts that this Court should also consider (1) time and labor necessitated by Defendants' obstructionist tactics, (2) professional opportunity restrictions, and (3) the public benefits of this litigation.[1]

---

[1] Rotondi also argues that the "enormous" expenses he had advanced, particularly the $9,000 mediation expense, support his requested hourly rate. Pl Mem at 15. However, expenses advanced is not a *Johnson* factor. In any event, consideration of this factor would not have altered the Court's analysis.

First, Rotondi argues that Defendants' obstructionist tactics greatly increased the time and labor required for this case. Similarly, he asserts that these restrictions rendered him unable to accept other matters during this case. However, Rotondi fails to offer any specific facts demonstrating that otherwise-available business was foreclosed due to this case's time limitations. In any event, "certain of the *Johnson* factors," such as these, "more logically relate to the number of hours for which an attorney should be compensated, than to the setting of the reasonable hourly rate," *G.B. ex rel. N.B. v. Tuxedo Union Free School Dist.*, 894 F. Supp. 2d 415, 433 n.17 (S.D.N.Y. 2012) (collecting cases). Accordingly, this Court will consider these arguments in its reasonable hours calculation.

Second, Rotondi asserts that his representation of Plaintiff in this case restricted his professional business opportunities. He contends that it is unlikely that he will obtain any Request for Proposals with New York State entities in the future despite his substantial experience representing government entities. However, Rotondi fails to provide any specific reasons why this case would prevent him from working for New York State entities in the future.

Finally, Rotondi asserts that public benefits of this case provide further support for his requested hourly rate. Rotondi points this Court to *City of Riverside v. Rivera*, 477 U.S. 561 (1986) and *Cowan v. Prudential Ins. Co. of America*, 935 F.2d 522 (2d Cir. 1991), which discuss the public benefits of civil rights litigation. Rotondi contends that this case prompted beneficial institutional changes by exposing a discriminatory supervisor as well as the politics at RIOC. *See* Rotondi Decl. Ex. PP ¶ 9-11 (ECF No. 186-4). Further, this matter allowed another RIOC employee to copy the complaint filed in this case to meet a filing deadline and obtain representation. *See id.* Ex. II (ECF No. 186-4).

Defendants dispute that this case garnered any public benefits since Plaintiff's Rule 68 Offer of Judgment lacked any finding or adjudication of culpability and is hardly a matter of "public import." Def Opp. at 22 n.18.

The Court agrees with Defendants. Cases relied on by Rotondi addressed favorable trial verdicts affirming liability. In contrast, the Offer of Judgment in this case specifies that it "is not to be construed either as an admission that the Defendants are liable in this action, or that Plaintiff has suffered any damages." ECF 162. There has been no finding or adjudication of discrimination, and Plaintiff has obtained no declaratory or injunctive relief. As such, Plaintiff's rights were not "vindicated" and the public interest in civil rights enforcement was not significantly advanced. *See Baird*, 219 F. Supp. 2d at 524-25.

In light of all of these case-specific factors, the Court holds that Rotondi's hourly rate shall be reduced to $350 per hour.

**B. Reasonable Hours Worked**

Next, the Court must determine the number of "reasonable hours" worked. *See DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir. 1985). Hours that are "not reasonably expended," such as those that are "excessive, redundant, or otherwise unnecessary," must be excluded from attorneys' fees awards. *Hensley*, 461 U.S. at 434. In determining whether hours are "reasonable," the relevant question "is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). Such an examination is "dependent on the unique facts of each case." *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992). A district court "must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." *DiFilippo*, 759 F.2d at

235. This includes an assessment of "what is appropriate for the scope and complexity of the particular litigation." *Carey*, 711 F.2d at 1146. In this analysis, "the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *DiFilippo*, 759 F.2d at 236.

The Supreme Court has cautioned that "trial courts need not, and should not, become green-eyeshade accountants." *United States ex rel. Bisk v. Westchester Med. Ctr.*, No. 06-cv-15296, 2016 WL 8254797, at *11 (S.D.N.Y. Aug 5, 2016) (citing *Fox v. Vice*, 563 U.S. 826, 838 (2011)). Accordingly, a district court is not required "to set forth item-by-item findings concerning what may be countless objections to individual billing items." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). Rather, a court may use a percentage reduction "'as a practical means of trimming fat from a fee application.'" *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (quoting *Carey*, 711 F.2d at 1146).

Here, Rotondi contends that his requested 3,229 hours are reasonable because Defendants engaged in obstructionist tactics throughout this litigation and he exercised billing discretion. Defendants contest that their litigation tactics necessitated such hours. They charge that the requested hours are grossly excessive given that this case was resolved well before the conclusion of discovery. The cause of the high hours, they assert, is that Rotondi billed excessively, including billing for pre-suit advocacy and unnecessary or redundant work. They further contend that Rotondi engaged in improper block billing.

As an initial matter, the Court holds that Rotondi's request of 3,229 hours is an enormous amount of time for a case that involved eight depositions and did not go to trial. No reasonable

client would be willing to pay attorneys' fees based on over 3,220 hours for the work purportedly performed by counsel in this case.

### Defendants' Tactics

Rotondi contends that these hours were necessary given Defendants' "obstructionist tactics." Pl Mem at 18. He relies on *Rivera* for the proposition that "the defendant cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiffs in response." 477 U.S. at 589 n.11. However, the *Rivera* Court determined that the defendant's settlement offer during jury deliberations was not made in a timely manner. In comparison, here Defendants made their Rule 68 Offer of Judgment well before discovery was complete. Furthermore, as Rotondi admitted, Defendants offered Plaintiff the option of consensual resolution through mediation three months after being served with Plaintiff's Notice of Claim. Rotondi Decl. ¶ 57. Defendants here tried to do precisely what the *Rivera* Court instructed, which is to make a reasonable settlement offer in a timely manner to avoid paying substantial attorneys' fees. *See Rivera*, 477 U.S. at 589 n.11. To the extent that Defendants' rescheduling of depositions and change of counsel necessitated longer hours, it strains reason to believe that it necessitated these hours.

### Pre-Suit Work

Defendants ask this Court to deny or reduce Rotondi's hours expended on pre-suit work—namely Plaintiff's EEOC proceeding and Freedom of Information Law ("FOIL") requests. Generally, attorneys' fees may "be awarded for work done in a prior administrative proceeding which 'was both useful and of a type ordinarily necessary to advance' the subsequent § 1988 civil rights litigation." *Cullen v. Fliegner*, 18 F.3d 96, 105-06 (2d Cir. 1994) (quoting *N. Carolina Dep't of Transp. v. Crest St. Comm. Council, Inc.*, 479 U.S. 6, 15 (1986)).

As explained by the Second Circuit, a Title VII complainant must file a charge against a party with the EEOC or an authorized state agency before the complainant can sue that party in federal court. *Vital v. Interfaith Medical Center*, 168 F.3d 615, 619 (2d Cir. 1999) (citing 42 U.S.C. §2000e-5(f)(1)). Thus, the EEOC action was necessary for Plaintiff to "notify the charged party of the alleged violation and also [to] bring the party before the EEOC, making possible effectuation of [Title VII]'s primary goal of securing voluntary compliance with its mandates." *Id.* The Court also determines that at least some FOIL requests appear useful and necessary to advance this case. For instance, FOIL requests to other New York state agencies were necessitated by Defendants' failure to timely and appropriately respond to Plaintiff's FOIL requests to RIOC. Rotondi Decl. Ex. I. Indeed, courts in this Circuit have awarded attorney's fees for such pre-suit work. *See, e.g., Marshall v. State of New York Div. of State Police*, 31 F. Supp. 2d 100,105 (N.D.N.Y. 1998) (awarding attorneys' fees for hours associated with FOIL litigation); *Shea v. Icelandair*, No. 92-cv-7994, 1996 WL 656446, at *3 (S.D.N.Y. Nov. 8, 1996) (awarding attorneys' fees for work related to EEOC proceeding).

Nevertheless, the Court must determine whether the hours expended on this pre-suit work were reasonable. Rotondi allegedly spent 215 hours drafting a 79-page EEOC charge that did not result in a determination, 200 hours in October and December 2015 selecting a mediator for a proposed pre-suit mediation that never took place, and over 116 hours on FOIL requests in December 2015 alone. In total, Defendants estimate that Rotondi billed 875.85 hours before even filing the complaint. Affidavit of Mark N. Reinharz ("Reinharz Aff."), ¶ 26 (ECF 192). Due to Rotondi's block billing practice, it is impossible to determine the exact number of hours expended on these tasks. Nevertheless, the Court agrees that these time entries are excessive

given Plaintiff's purported experiences and expertise and the limited degree of success achieved. The Court has incorporated such consideration into its hours' reduction, discussed below.

***Frivolous or Unreasonable Claims***

Next, Defendants challenge the reasonableness of Plaintiff's time pursuing frivolous or unreasonable claims. The Supreme Court has held that "a plaintiff's claim may be frivolous, unreasonable, or groundless if the claim is barred by state sovereign immunity." *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642 (2016). Courts within this District have ruled that RIOC, its Board, and its executives and directors are entitled to sovereign immunity. *See e.g. Jones v. Roosevelt Island Operating Corp.*, No. 13-cv-2226, 2013 WL 6504428 (S.D.N.Y. Dec. 11, 2013); *Chafetz v. Roosevelt Island Operating Corp.*, No. 97-cv-0761, 2000 WL 1277337 (S.D.N.Y. Sept. 8, 2000). However, this Court noted that "Plaintiff has created a better record here than in *Chafetz*." *Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 987 (S.D.N.Y. 2017). The Court determines that even if a reasonable attorney would have pursued these claims, the amount of hours Rotondi expended on them here was excessive.

***Excessive Billing***

Defendants also contend that Rotondi billed excessively and unreasonably for a variety of tasks. This includes:

- "[t]ime entries allegedly totaling approximately 60 hours in May, 2016 ($39,000 in fees at the requested rate) for merely effecting service of the Complaint on the Defendants." Def Mem at 18-19.

- "[t]ime entries allegedly totaling 44 hours ($28,600 in fees at the requested rate) for preparing an unsuccessful, three-page opposition to the Defendants' request for an extension of time to respond to the Complaint." *Id.*

- Time entries from October 9, 2015 to December 18, 2015 researching, corresponding or discussing re selection of a mediator allegedly totaling 200 hours. Reinharz Aff. ¶ 26.

- Time entries in January, February, and March researching the viability of a motion for recusal against Magistrate Netburn though no such motion was ever filed. *Id.*

- Time entries seeking a replacement counsel or additional counsel in January and March. *Id.*

Based on a review of the record, it is impossible to reasonably discern the exact number of hours expended by Plaintiff's counsel on these matters due to his block billing practice. However, the Court determines that the aforementioned time entries are unreasonable and has incorporated such considerations into its reduction below.

### *Block Billing and Vague Entries*

Finally, Defendants contend that Rotondi's records are vague and consist of block billing. "As a general rule, block billing is disfavored." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015). Courts in this District have found that single time entries recording five hours or more are "block billed." *Williams v. New York City Housing Auth.*, 975, F. Supp. 317 (S.D.N.Y. 1997). This is because they "have a tendency to obfuscate the amount of time expended on distinct tasks and introduce an element of vagueness into a fee application, making it difficult to determine if the reported hours are duplicative or unnecessary." *Miroglio*, 629 F. Supp. 2d at 313; *accord Beastie Boys*, 112 F. Supp. 3d at 53 (collecting cases). Similarly, courts disprove of "vague or incomplete" record-keeping because it does not "enable the court to determine whether a reasonable amount of time was spent on each activity" or "whether the

particular activity is compensable." *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 313 (S.D.N.Y. 2009) (collecting cases).

Here, the Court agrees that Plaintiff's time records are seriously deficient. First, numerous entries are vague and heavily redacted. For example, Rotondi's time entry on April 27, 2015 for 3.8 hours read: "Numerous extended t/c's with DL re: [REDACTED]." Rotondi Decl. Ex. QQ at 57. His time entry on May 18, 2015 for 1.7 hours read: "several extended t/c's and numerous correspondence with DL re [REDACTED]; revise document preservation letter to C. Indelicato; [REDACTED] DLS [REDACTED]: extended t/c w/ DL re [REDACTED]; t/c with DL re [REDACTED]." *Id.* at 60. Many other entries are just as illegible. Such entries impose a great burden on this Court to meaningfully assess the reasonableness or necessity of individual tasks allegedly performed in a given day. *See Mirgolio*, 629 F. Supp. 2d at 313.

Second, based on a review of Rotondi's time records, the Court determines that approximately one half of time entries consist of improper block billing in excess of seven and a half hours. In many instances, Rotondi has taken block billing to an extreme, billing over ten hours in a single time entry. For example, Rotondi billed between 12.8 and 14.7 hours at a time on seven occasions between October 13, 2015 and October 21, 2015. The time entry for 12.8 hours on October 13, 2015 read, "several rounds of revisions to EEOC particulars of charge; t/c's and correspondence with DL re [REDACTED]; t/c rate Neil Brickman follow up; review [REDACTED] from DL [REDACTED]; multiple additional correspondence w/ former colleague re potential mediators suitable to RIOC, individuals and DL." Rotondi Decl. Ex. QQ at 78. Similarly, his time entry the next day for 13.6 hours read:

> correspondence w/ DL re [REDACTED]; several rounds of revisions to Claimants
> Supplemental Particularized EEOC Charge; t/c's w/ DL re [REDACTED];
> correspondence and t/c's w/ colleagues re potential mediator that may be acceptable to
> DL and Melick client's, including D. Albalah, R. Raisfeld proposed by defendants and

others; t/c's and correspondence w/ DL re [REDACTED]; draft, revise, finalize and send correspondence w/ attachments to Dir. Freeman COOG re update on RIOC's unlawful response to DL's September 3, 2015 FOIL request; correspondence w/ DL re [REDACTED]; review board meeting video for potential use in supplement.

*Id.*

From these entries, the Court cannot discern the amount of time spent on any individual activity or the subject matter of various communications. Resultantly, it cannot ascertain the reasonableness of these hours. As such, it would not be practicable to identify specific time entries that should be eliminated. Based on a review of relevant case law and the record in this case, the Court applies an across-the-board reduction of 60% to Plaintiff's overall requested hours. *See Guardians Ass'n of Police Dep't of New York v. City of New York*, 133 F. App'x 785, 786 (2d Cir. 2005) (affirming 80% reduction of claim for 314 hours); *Antonmarchi v. Consol. Edison Co. of New York*, No. 03-cv-7735, 2012 WL 3126004, at *3 (S.D.N.Y. July 31, 2012) (applying 80% reduction); *Simmonds v. New York City Dept. of Corr.*, No. 06-cv-5298, 2008 WL 4303474, at *8 (S.D.N.Y. Sept 16, 2008) (applying 40% reduction).

This Court has calculated that Rotondi's time entries beyond the date of the Offer of Judgment (April 13, 2017) total 241.38 hours. Rotondi Decl. Ex. QQ at 204-216. Excluding these hours for the reason set forth *infra* Section V and then imposing the 60% reduction, Plaintiff's requested hours are reduced to 1,195.05 hours.

### C. Reduction Based on Recovery Amount and Contingency Arrangement

Defendants assert that this Court should further reduce Plaintiff counsel's fees based on Plaintiff's recovery of a "comparatively modest $180,000." Def Mem at 21. A district court may adjust may adjust the lodestar when it does not adequately take into account a factor that may properly be considered in determining a reasonable fee. *See Millea*, 658 F.3d at 167. However, such adjustments are appropriate only in "rare circumstances," because the "lodestar figure

[already] includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." *Id.* (internal citations and quotation marks omitted). "For example, a court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors." *Id.* Here, this Court already considered and incorporated the limited success Plaintiff has achieved into its determination of the lodestar. Therefore, no further reduction is warranted on this basis.

Additionally, Defendants contend that fees should be capped at one-third of the recovery amount based on counsel's contingent fee arrangement.[2] The Supreme Court has rejected this argument, determining that "a contingent fee contract does not impose an automatic ceiling on an award of attorney's fees." *Blanchard v. Bergeron*, 489 U.S. 87, 91-93 (1989). "Since *Blanchard*, the Second Circuit and courts outside this circuit have awarded reasonable statutory attorneys' fees beyond the amount that would be recovered under a contingency agreement." *In re Palermo*, No. 08-cv-7421, 2011 WL 3874866, at *18 (S.D.N.Y. Sept. 2, 2011) (collecting cases). In light of Congress's purpose behind § 1988 and § 1983 to ensure effective access to the judicial system and to attract competent counsel for cases like this, this Court holds that the fee award in this case need not be limited by the contingency-fee arrangement.

## III. Costs

"[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *U.S. Football League v. National Football League*, 887 F.2d 408, 416 (2d Cir. 1989). The "costs awarded under § 1988 include not only those ordinarily recoverable pursuant to 28 U.S.C. § 1920 and Rule 54(d)(1) of the Federal Rules of Civil Procedure, but also any additional expenses ordinarily charged in the particular legal

---

[2] Defendants argue for a one-third cap because the retainer Rotondi submitted is redacted to the point of illegibility, and a customary fee arrangement in this district is one-third.

marketplace." *Robinson v. City of New York*, No. 05-cv-9545, 2009 WL 3109846, at *10 (S.D.N.Y. Sept. 29, 2009) (citing *U.S. Football League*, 887 F.2d at 763). Such costs include "[i]dentifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs." *Kuzma v. I.R.S.*, 821 F.2d 930, 933-34 (2d Cir. 1987); *see also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (collecting cases). Costs may not be awarded, however, for "routine office overhead." *Kuzma*, 821 F.2d at 934.

Here, Rotondi seeks $30,000.3 in costs. Rotondi submitted an itemized statement of litigation expenses in support of this request. *See* ECF No. 187-5. The costs primarily consist of ordinary out-of-pocket expenses such as travel, postage, and transcriptions. *See id.*

Defendants challenge $8,859.38 requested for Plaintiff's share of the mediator's fee for an unsuccessful mediation that took place on March 12, 2017 on the basis that mediation expenses are not generally recoverable as costs. However, Defendants have cited no authority for this proposition. As Rotondi notes, courts in this District have awarded mediation expenses. *See Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) (awarding mediation expenses as reasonable out-of-pocket expenses); *Hall v. ProSource Tech., LLC*, No. 14-cv-2502, 2016 WL 1555128, at *17 (E.D.N.Y. Apr 11, 2016) (same). This Court agrees that mediation expenses are properly reimbursable.

Defendants next challenge Rotondi's request for $4,693,75 for videotaping the depositions in this case. "Video fees have been deemed taxable where there was an expectation among the parties that the video of the testimony might be presented at trial [.]." *In re Omeprazole Patent Litig.*, No. 00-cv-6749, 2012 WL 5427849, at *4 (S.D.N.Y. Nov. 7, 2012) (citations omitted). Courts have accordingly denied fee requests where, as here, plaintiffs have failed to establish any basis to conclude that any of the individuals deposed would not be

available to testify at trial. *Id.; see Pall Corp. v. 3M Purification Inc.*, No. 03-cv-0092, 2012 WL 1979297, at \*9 (E.D.N.Y. June 1, 2012) (collecting cases). Moreover, Plaintiff also has copies of the transcripts from the depositions. Accordingly, the videographer costs are duplicative. *Pall Corp.*, 2012 WL 1979297 at \*9.

Defendants further contend that the remaining costs are unsupported by valid documentation and thus inadequate for reimbursement. This Court holds that Rotondi has submitted valid and ascertainable documentation for $27,071.96 in costs. Excluding the videographer costs, Rotondi's remaining costs, in the total of $22,378.21, are properly reimbursable as reasonable out-of-pocket expenses. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998).

## IV. Pre-Judgment and Post-Judgment Interest

Rotondi seeks pre-judgment interest on both his recovery and the attorneys' fees award up to entry of judgment by this Court, as well as post-judgment interest from the entry of judgment.

### A. Pre-Judgment Interest

Defendants argue that pre-judgment interest is inappropriate where, as here, a plaintiff has accepted an Offer of Judgment. Defendants rely on *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522 (10th Cir. 1992), where the Tenth Circuit Court held that "Rule 68 consent judgment for sum certain must, absent indication otherwise, be deemed to include prejudgment interest; thus, such judgment with no mention of prejudgment interest may not be altered by plaintiff's subsequent motion for prejudgment interest."; *see also Miller v. Dugan*, 764 F.3d 826 (8th Cir. 2014) (citing *Mock*, 971 F.2d at 830) ("Prejudgment interest is not a 'cost' in the narrow sense that Rule 68 uses the term.").

Defendants do not cite, and this Court has not found, any case law on point in this Circuit However, the Court finds *Mock* and *Miller* persuasive. The Offer of Judgment here did not specifically entitle Plaintiff to prejudgment interest. *See* ECF No. 162 (providing for "all reasonable attorneys' fees, costs and expenses *incurred up to the date of this Offer of Judgment*") (emphasis added). Any prejudgment interest that Plaintiff may have been entitled to was encompassed in the $180,000 judgment. Accordingly, the Court denies Plaintiff's request for prejudgment interest.

### B. Post-Judgment Interest

"Post-judgment interest is governed by 28 U.S.C. § 1961(a), which provides that '[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court.'" *Auto. Club of New York, Inc. v. Dykstra*, No. 04-cv-2576, 2010 WL 3529235, at *4-5 (S.D.N.Y. Aug. 24, 2010). "The award is governed by the federal rate as described in 28 U.S.C. § 1961." *Collado v. Donnycarney Rest. L.L.C.*, No. 14-cv-3899, 2015 WL 4737917, at *9 (S.D.N.Y. Aug. 10, 2015) (citation omitted). As Defendants do not dispute, Rotondi is entitled to post-judgment interest on his attorneys' fees and costs "commencing on the date the Clerk's Office entered judgment and ending on the date of payment." *Gamble v. E. Bronx N.A.A.C.P. Day Care Ctr., Inc.*, No. 04-cv-1198, 2008 WL 2115237, at *3 (S.D.N.Y. May 15, 2008).[3]

## V.    Fees for Fees and Fees Beyond Offer of Judgment

Rotondi additionally seeks $504,687.16 in fees incurred in connection with his fee application. Supplemental Declaration of Anthony Rotondi ("Rotondi Supp Decl") ¶ 4 (ECF No.

---

[3] Rotondi is not seeking post-judgment interest for the period from August 2, 2017 to December 22, 2017, when he received numerous extensions for his fee application. Pl Mem, at 25 n. 7. The Court agrees that such interest would be inappropriate.

219). Defendants oppose both this request and any requests for fees incurred following Plaintiff's acceptance of the Offer of Judgment on April 20, 2017.

Generally, "a reasonable fee should be awarded for time reasonably spent in preparing and defending an application for § 1988 fees." *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999); *accord Himmel v. Cntry. in New York, LLC*, No. 09-cv-5073, 2011 WL 31045, at *3 (S.D.N.Y. Jan. 4, 2011). However, "that is not the case where the offer of judgment excludes such fees by limiting fees to the date of the offer." *Blake v. New York City Health & Hosps. Corp.*, No. 14-cv-3340, 2016 WL 6520067, at *4 (S.D.N.Y. Nov. 3, 2016) (collecting cases). This is because "Rule 68 offers of judgment and acceptances thereof are contracts to be interpreted according to ordinary contract principles." *Steiner v. Lewmar, Inc.*, 816 F.3d 26, 31 (2d Cir. 2016). If such terms are clear, courts must "take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." *Id* at 32. Courts have accordingly denied fees incurred following the acceptance of an Offer of Judgment, including fees for fees. *See Blake*, 2016 WL 6520067, at *4 (collecting cases).

Here, the Offer of Judgment expressly provided for "all reasonable attorneys' fees, costs and expenses incurred up to the date of this Offer of Judgment." ECF No. 162. Accordingly, Rotondi is not entitled to fees beyond the date of the Offer of Judgment. *See Blake*, 2016 WL 6520067, at *4. For this reason, he is also not entitled to fees for post-judgment work. *See id.*

In any event, the Court would deny fees for preparing this application. When an attorney chooses to submit reconstructions of contemporaneously kept time records, denying fees for time spent preparing the fee application is "an appropriate and necessary penalty for omitting to include the time records." *Marion S. Mishkin Law Office v. Lopalo*, 767 F.3d 144, 150 (2d Cir.

2014) (citing *Coughlin*, 801 F.2d 570). Here, after numerous extensions over seven months since this Court's entry of judgment, Plaintiff's counsel submitted what appear to be reconstructions of his time records. Even if Rotondi did keep contemporaneous records, the Court notes that a computer timekeeping system would have simplified the entire process. *See id.* Having chosen to keep time in an inefficient manner, Plaintiff's counsel cannot recoup the costs flowing from his burdensome method of timekeeping.

## CONCLUSION

For the reasons set forth above, this Court grants in part and denies in part Attorney Rotondi's motion for attorneys' fees, costs, pre-judgment interest, and post-judgment interest. The Court awards: (1) attorneys' fees in the amount of $418,266.8; (2) costs in the amount of $22,378.21; and (3) post-judgment interest in accordance with 28 U.S.C. §1961.

**SO ORDERED.**

Dated: September 27, 2018
      New York, New York

                                    **ANDREW L. CARTER, JR.**
                                    **United States District Judge**