Plaintiff respectfully submits this Memorandum of Law in Further Support of Plaintiff's

Motion for Reconsideration or Reargument and to Enlarge / Supplement / Expand the Record and in

Reply to Defendants' Opposition.

## PRELIMINARY STATEMENT

Plaintiff has been litigating this case since April 2015 (including pre-filing required

submissions and shunned efforts by Plaintiff to settle the matter early on) and is now approaching the

four (4) year anniversary. On May 17, 2017, after Plaintiff's acceptance of a Rule 68 Offer of

Judgment, the Court held a telephone conference to address Defendants' attempt to delay entry of

that judgment as set forth in prior a letter submission to this Court from Plaintiff. During that

appearance, the specific language of the Rule 68 Offer and the subsequent judgment were discussed

in detail. Additionally, Plaintiff raised concerns regarding, among other things, Magistrate Netburn's

potential bias and potential conflicts of interests, and indicated that if Magistrate Netburn were to be

further involved in the matter, Plaintiff desired to file a recusal / bias / removal motion. In response

to Plaintiff's request, this Court unequivocally indicated that it would handle Plaintiff's Fee

Application because Plaintiff would be entitled to fees in pursuing his fees and therefore no fees

would be need to be awarded for a recusal motion. Defendants voiced no objection to that statement.

Plaintiff understandably relied upon that exchange.

In his opening papers, Plaintiff submitted a particularly thorough Fee Application, which

Defendants described as a "voluminous fee application, which totals in excess of 1000 pages in

length." (Dkt. 188) and that "[t]he Fee Application and supporting materials totals over 1,000 pages."

(Dkt. 190). In replying to Defendants' Opposition, Plaintiff again submitted particularly thorough

papers justifying in great detail fees requested. Plaintiff provided extensive evidence regarding the

dilatory and delay tactics, bad-faith conduct of Defendants and obvious collusive efforts by other

1

government entities designed to thwart Plaintiff's prosecution of his claims.[1] In stark contradiction to Defendants' submissions which simply misstated facts without any evidentiary support -- because there was none-- Plaintiff provided ample evidentiary support for his factual assertions.

Accordingly, not only could Plaintiff not expect the Court to deny a fees on fees award,[2] but Plaintiff could not reasonably be expected to have to go to lengths of submitting additional materials such as evidence of the costs of stenographers and videographers for video depositions.[3] Plaintiff likewise could not expect the Court to accept Defendants' unauthorized sur-reply which submission

---

[1] In their Opposition and on prior submissions, Defendants falsely claim that Plaintiff's submissions contained *ad hominem* attacks on Defendants when, in fact, Plaintiff's submissions simply accurately recite facts (particularly regarding Defendants' misconduct over the course of almost 4 years) and provide supporting evidence — Unable to contradict Plaintiff's evidence with their own evidence — because there is none — Defendants fail to refute Plaintiff's accurate facts and instead characterize those facts as *ad hominem* attacks, which effectively constitutes an admission of the facts set forth by Plaintiff. Further, Defendant's characterization of the facts setting forth their own actual conduct as "*ad hominem* attacks" essentially constitutes an admission that their behavior indeed constituted misconduct.

Defendants also falsely claim that Plaintiff submitted *ad hominin* attacks on Judge Netburn, when again Plaintiff simply recited facts that occurred. In addition to exhibited bias in rulings and conferences, hamstringing Plaintiff, and permitting Defendants to obstruct discovery, Plaintiff had other concerns regarding potential conflicts or bias. For example, Judge Netburn's spouse is an attorney whose bio states that he represents two parties (who Judge Netburn refused to identify) subpoenaed by the Moreland Commission. He also represents other prominent democratic political officials. Upon information and belief, the Moreland Commission (created to investigate lobbying and ethical issues in State government) served subpoenas on certain members of the Gov. Cuomo's Executive Chamber or staff and/or individuals having ties to high-level Governor's office members. Meanwhile, the highest levels of the Gov.'s Office Executive Chamber were directing this litigation and certain former and current members of the Executive Chamber and staff were involved in issues central to this case. In fact, two years after Plaintiff's termination, Defense Counsel claimed for the first time that Plaintiff was terminated by Alphonso David, who is "Gov. Cuomo's chief counsel and principal legal advisor, and oversees all significant legal and policy deliberations affecting New York State, including evaluating proposed legislation; implementing laws and policies and formulating the State's posture in both affirmative and defensive litigation." https://cardozo.yu.edu/directory/alphonso-david.

Further, Judge Netburn had been a Director of the Fortune Society, a non-profit that depends on government grants. The Fortune Society has received over $125 million in government funding since 2010, which includes funding from New York State and NYC. https://www.charitiesnys.com/RegistrySearch/show_details.jsp?id={60683F89-2318-42D3-A5BA-480DD68AB6AF} It appears that another close family member is an executive with other non-profits such as Project Renewal that also received significant grants. It is well-known among those involved with non-profits that they strive to avoid conflict with the Gov.'s Office Executive Chamber for fear of adversely affecting their grant funding (as admitted by RIOC's Counsel). In fact, after Plaintiff's termination, a non-profit interested in hiring him as General Counsel ultimately did not for stated fear of running afoul to the Executive Chamber.

[2] A party is justified in relying on the statements of a district court. *See e.g. Thompson v. INS*, 375 U.S. 384 (1964) (holding petitioner's justified reliance on statement of district court that his motion was timely to be a "unique" circumstance which rendered timely his otherwise untimely notice of appeal.) *Id.* at 387. *See also Endicott Johnson Corp. v. Liberty Mut. Ins. Co.*, 116 F.3d 53, 57 (2d Cir. 1997) (discussing reliance on court statements regarding the time for filing a notice of appeal); *Fox v. City University of New York*, 187 F.R.D. 83 (1999). The same concept of justifiable reliance and lulling into a belief can be applied to the court's statements concerning fees on fees.

[3] Because of Defendants' obstruction, Plaintiff's counsel was ordered to take 30 depositions within 5 to 6 weeks between Albany and NYC and Defendants' absence of integrity had been at issue (where video depositions would be particularly helpful to a jury), including with at least one of the Defendants providing false information under oath in her employment application to RIOC and having been accused by Director Defendants of "lying" to them regarding Plaintiff's termination, Defendants destruction / refusal to produce or missing documents supporting Plaintiff's claims, and the apparent creation of falsified documents to supporting one of Defendants ever-shifting defense theories.

contained factual and legal representations and was submitted against the Rules and not via motion or request, particularly given the denial of even a single page enlargement of Plaintiff's 10-page Reply limit.[4]

## I.     Plaintiff Timely Filed His Motion Under Rule 59.

In requesting that the Court deny the Motion, Defendants rely on cases holding that district courts lack the ability to extend the period for filing a Rule 59(e) motion to reconsider and consequently an untimely motion does not toll the time for filing an appeal. Those cases, however, are inapplicable to the current motion and are directed at issues related to the timely filing of a notice of appeal. The holdings of those cases are meant to require the party seeking reconsideration to either (i) timely file a Notice of Appeal, (ii) obtain permission from the district court to extend the time for filing an appeal, or (iii) file a Rule 59(e) motion within the prescribed time that effectuates a tolling the time to appeal. Here, in contrast to the cases relied upon by Defendants, Plaintiff timely filed his notice of appeal and does not require this Motion to toll the time for filing the appeal. Accordingly, any concern that permitting the district court to consider a Rule 59(e) motion which is filed outside of the 28-day period could be used to avoid the time limitations for filing a notice of appeal does not exist under the present facts. As such, Plaintiff was entitled to relief under Rule 59(e) for among other reasons, "the need to correct a clear error [and] prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust,* 729 F.3d 99, 104 (2d Cir. 2013)

## II.    Defendants Waived Any Objections Regarding the Extension of the Deadline to File A Motion to Reconsider / Reargue.

Even setting aside that the reasons behind the time limitations set forth in Rule 60 are not at issue here because Plaintiff filed a timely notice of appeal, Defendants waived any argument in that the Court cannot consider the motion itself. Defendants not only consented to the extending the

---

[4] Similarly, Plaintiff could not reasonably expect that he would not be entitled to redact privileged information from his submissions, particularly considering that Plaintiff is an attorney and therefore engaged in extensive discussions and correspondence with his counsel regarding the substance of the case.

deadline but submitted with Plaintiff for the Court's consideration an agreed upon briefing schedule. Dkt 223. Unlike the jurisdictional 30-day deadline for filing a notice of appeal (with which Plaintiff complied in this case), the 28-day tolling deadline for filing a motion for reconsideration essentially is a "claim-processing rule" that is subject to waiver and equitable exception. *Weitzner v. Cynosure, Inc.*, 802 F.3d 307, 311–13 (2d Cir. 2015). To hold otherwise would mean that it would be permissible for Defendants to seek ask the Court to perform an act that Defendants believed was contrary to the rules, ask the Court to issue an order memorializing that impermissible act, and then claim the Court acted outside its authority.

### III.   The Relief Plaintiff Requests Also Is Available Under Other Rules Upon Which the Motion Is Premised Including Rule 60

Based on their flawed argument that Plaintiff's Rule 59 Motion is untimely -- which is just one basis upon which Plaintiff moves -- Defendants appear to assume that Plaintiff's entire motion is untimely. However, Rule 60(c)(1) provides that "A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Accordingly, Defendants cannot purport to claim there was an impermissible extension of time for Plaintiff to file his motion under Rule 60.

Further, contrary to what Defendants argue, the standard for motions under Rule 60(b) are not more restrictive than the standards of a Rule 59 motion and provides the same or broader relief as Rule 59(e) for any of the below-referenced reasons.[5] Rule 60(a) permits a court to "correct a clerical mistake or a mistake arising from oversight or omission … in a judgment, order, or other part of the record." Rule 60 (b) entitled "Grounds for Relief from a Final Judgment, Order, or Proceeding"

---

[5] The Second Circuit's view is that, if a court has made a mistake, it makes "good sense" to permit the court to correct such error and thereby avert the need for an appeal where the motion for reconsideration has been made within the permissible time to appeal (or at least is not a substitute for an untimely appeal). *See Schildhaus v. Moe,* 335 F.2d 529, 531 (2d Cir. 1964). Here Plaintiff filed a timely notice of appeal, and therefore is not asking the district court to use either Rule 59(e) or Rule 60(b) to address any errors or issues as a substitute for a time-barred appeal. Instead, Plaintiff is requesting that the district court follow the Second Circuit's directive to try to correct errors to avoid the need for the appeal to proceed.

provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; …; or (6) any other reason that justifies relief. Finally Rule 60(d) entitled "Other Powers to Grant Relief" provides that "This rule does not limit a court's power to: ….(3) set aside a judgment for fraud on the court."  Plaintiff provided sufficient basis for the reconsideration of the Court's Order under any of the above provisions well as Rule 59(e) and Rule 52.

## IV.   Defendants' Argument Regarding the Availability of Evidence is Unavailing.

First, contrary to Defendants'' assertions, not all the exhibits annexed to the Rotondi Declaration were in Plaintiff's possession prior to filing his fee application opening or reply papers. For example, the NYS Governor's Office Executive Chamber which controlled the litigation and RIOC waited until the motion was fully submitted before releasing the inappropriate wholly redacted Schoeman Updike Law Firm invoices. Notably, RIOC and the Governor's Executive Chamber continue to wrongfully flout FOIL by not producing the invoices of their various law firms in this matter, instead just producing a few completely redacted invoices.

Further This Court has granted motions for reconsideration even when different arguments are raised on a motion to reconsider and arguments should have been raised in original motions because they were available at that time. See e.g. *Jablonski v. Special Counsel, Inc.*, No. 1:16-CV-05243 (ALC), 2018 WL 3979591, at *2 and fn 2 (S.D.N.Y. Aug. 20, 2018) (Carter, J.) (granting plaintiff's motion in part notwithstanding holding "Plaintiff's arguments here should have been raised in its original opposition to Defendant's Motion to Dismiss" and relevant "cases … were decided well before Plaintiff filed her opposition."); *see also In re Term Commodities Cotton Futures Litig.*, No. 12 CIV. 5126, 2014 WL 5014235, at *7 (S.D.N.Y. Sept. 30, 2014) (Carter, J.) (holding, Court finds

reconsideration ... is necessary to prevent manifest injustice); *Travelers Ins. Co. v. Sequa Corp.,* No. 08CIV10400ALCDCF, 2014 WL 12812403, at \*3 (S.D.N.Y. Mar. 10, 2014) (Carter, J.) (granting reconsideration because manifest injustice would result without reconsideration" where decision ignored case documents regarding choice of law provision).

**V.      Defendants' Sur-Reply Was Submitted Without Seeking Court Permission and In Contradiction to Local Rules and This Court's Individual Rules, While Plaintiff's Submissions with His Motion to Reconsider and Supplement the Record Appropriately Were Submitted by Motion on Notice.**

Defendants make the meritless contention that their sur-reply—although filed without seeking or obtaining Court approval—was properly submitted but that Plaintiff's declaration—which was submitted upon motion and notice—violates the rules. Plaintiff's current motion to expand / supplement / enlarge the record, of course, is Plaintiff's request to the Court for such permission. Indeed, this Court recently issued a decision illustrating the difference between Defendants' unauthorized sur-reply and Plaintiff's motion. *Lazare Kaplan Int'l Inc. v. KBC Bank N.V.,* 2018 WL 4119142, at \*5 (S.D.N.Y. Aug. 29, 2018) (Carter, J). In *Lazare* this Court refused to consider supplemental filings on a fully briefed motion holding:

> [t]he S.D.N.Y. local rules do not contemplate the submission of a sur-reply in further opposition to a motion, and this Court's Individual Rules provide that "[s]ur-reply memoranda will not be accepted without prior permission of the Court." Local Civil Rule 6.1; Individual Rules of Practice § 2(B). Caselaw in this Circuit confirms that a court need not consider new claims raised in supplemental letters filed without leave of the Court. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC,* 127 F.Supp.3d 156, 164 n.5 (S.D.N.Y. 2015) (disregarding supplemental letter because it "improperly raises new arguments after the close of briefing and argument, without having sought or obtained permission for such a submission"); *Allen v. Avon Products, Inc.,* No. 81-cv-6895, 1988 WL 18841, at \*5 n.2 (S.D.N.Y. Feb. 22, 1988) ("It is this Court's policy not to accept supplemental submissions with respect to pending motions, filed without permission.").

*Id.* At the same time, this Court in *Lazare* recognized that "Fed. R. Civ. P. 15(d) [] permit[s] supplemental briefing '[o]n motion and reasonable notice'" -- which is exactly what Plaintiff did with his submissions. *Id.* Defendants, on the other hand, having been accustomed to being permitted to do as they wish during discovery, pursued their typical tactic of flouting rules they do not wish to comply

with and simply filed their unauthorized sur-reply as if it was their absolute prerogative to do so. Plaintiff could not reasonably expect the Court to accept such submission considering (i) its blatant violation of the rules, caselaw, and this Court's Individual Practice Rules (*see e.g. Lazare*), (ii) that in response to two separate requests by Plaintiff to enlarge the 10-page limit on Plaintiff's Reply, Defendants had vehemently opposed any page enlargement, and (iii) that the Court refused to provide Plaintiff with any page enlargement on his 10-page Reply in response to two page enlargement requests. Additionally, SDNY Local Rule 6.3 and its restriction regarding supporting declarations omits any reference to motions brought under Rule 60, one of the bases relied upon by Plaintiff.

Further, "[i]t is well-established that a district court 'has discretion to hear a motion to file a supplemental pleading at any time during which the action is before it,'" and even "[t]he fact that the action was tried does not prevent the granting of a motion under Rule 15(d) ... as the action is still pending." *Aktiebolag v. Andrx Pharm., Inc.*, 695 F. Supp. 2d 21, 26 (S.D.N.Y. 2010) (internal citations omitted). *Aktiebolag* even recognized another court's "grant[] [of a] motion for leave to file supplemental complaint alleging additional infringing acts after entry of judgment holding plaintiff's patent valid and infringed." *Id.*

Significantly, in none of the cases cited by Defendants in support of their argument that Plaintiff's Declarations should be stricken did the movant submit a motion to supplement the record as Plaintiff did. *See* Def's MOL at 7 citing *Gust, Inc. v. AlphaCap Ventures, LLC*, No. 15-cv-6192 (DLC), 2017 U.S. Dist. LEXIS 104411 (S.D.N.Y. July 6, 2017); *Ralph Oldsmobile v. Gen. Motors Corp.*, No. 99 Civ. 4567 (AGS), 2001 U.S. Dist. LEXIS 421 (S.D.N.Y. Jan. 23, 2001). Further, *Ralph Oldsmobile* involved a party's attempt to defeat a summary judgment motion decision -- determining whether there are disputed material facts -- through the submission of affidavits.

Equally significant is that the one case that Defendants cite to support the argument that their sur-reply was proper completely undermines both their position regarding the submission of their sur-reply and their objection to Plaintiff's declaration submission. Def. MOL at p. 8, *citing Grocery*

*Haulers, Inc. v. C & S Wholesale Grocers, Inc.*, No. 11 Civ. 3130 DLC, 2012 U.S. Dist. LEXIS 131598 at *16 (S.D.N.Y. Sept. 14, 2012). In *Grocery Haulers*, the party seeking to file additional submissions proceeded exactly as Plaintiff has in the instant motion, *i.e.* by appropriately filing a motion seeking the Court's acceptance of the additional submissions. *Id.* (stating "C&S filed a motion to file a sur-reply memorandum as to ...[the] motion for summary judgment). The Court granted the motion in that case -- just as the Court should grant Plaintiff's motion in this case. *Id.* The movant in *Grocery Haulers* did not proceed as Defendants have in this case -- by assuming they are entitled to continue their practice of flouting the rules and cavalierly behaving as if they are setting the rules that are to be followed. Because Defendants never moved on notice to file their supplemental pleadings, the Court should never have considered their unauthorized sur-reply.[6]

**CONCLUSION**

For the foregoing reasons, and for the reasons set forth in Plaintiff's other submissions to the Court, Plaintiff respectfully requests that the Court grant his Motion to Reconsider or Reargue and Motions to Expand, Supplement, or Enlarge the record and award Plaintiff the full amount of fees requested in his Fee Application, including fees, related to his Fee Application and other filings related to pursuing his Attorneys' Fees.

Dated:  New York, New York

December 14, 2018                    By: _____/s/_____

                                         Anthony J. Rotondi

                                         *Attorney for Plaintiff*
                                         Rotondi, LLC
                                         30 Wall Street, 8th Floor
                                         New York, NY 10005

---

[6] The "procedural impropriety" in Grocery Haulers that Defendants quote in their MOL had absolutely nothing to do with a parties complete and total failure to seek Court's permission to file supplemental pleadings, as Defendants herein have done. *See* Def. MOL at 8 in which Defendants use an ellipses to string together as one quote the beginning of a sentence in one paragraph with the last sentence at the end of another paragraph.