

1010 Franklin Avenue, Suite 200 | Garden City, NY 11530-2900 | bsk.com

MARK N. REINHARZ, ESQ.
mreinharz@bsk.com
P: 516.267.6320
F: 516.267.6301

August 15, 2019

**VIA FIRST CLASS MAIL**

Honorable Andrew L. Carter
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

Re:   *Donald Lewis v. The Roosevelt Island Operating Corporation, et al.*
      *16 Civ. 03071 (ALC)*

Dear Judge Carter:

We represent Defendant Roosevelt Island Operating Corp. in the above-referenced matter, and write jointly with counsel for the Individual Defendants

As the Court is aware, in May 2017 the Plaintiff accepted the Defendants' offer of judgment in this matter. Pursuant to the offer of judgment, the Plaintiff was to receive "the amount of One Hundred and Eighty Thousand Dollars ($180,000), plus all reasonable attorneys' fees, costs and expenses incurred up to the date of this Offer of Judgment, in an amount to be determined by the Court."

After the parties were unable to determine the amount of reasonable fees, the issue was briefed to the Court. On September 28, 2018, the Court issued its decision finding that Plaintiff was entitled to receive (1) fees in the amount of $418,266.80; (2) costs in the amount of $22,378.21; and (3) post-judgment interest in accordance with 28 U.S.C. §1961. On November 6, 2018, the Plaintiff filed a motion for reconsideration of the Court's decision. One of the principal arguments the Plaintiff made was that the Court had erroneously denied him "fees on fees." In other words, the Plaintiff claimed that he was entitled to fees for the time spent preparing his fee application even though the time had been incurred *after* the acceptance of the offer of judgment. The Plaintiff cited to a number of cases in support of his position, including *Lilly v. City of New York*, 2017 U.S. Dist. LEXIS 129815 (S.D.N.Y. August 15, 2017). Plaintiff's counsel specifically noted that the Court's decision in *Lilly* was on appeal to the Second Circuit at that time

In response to the motion for reconsideration, the Defendants filed a brief in opposition maintaining that the motion for reconsideration was both untimely and improper. The

Honorable Andrew L. Carter
August 15, 2019
Page 2

motion had been filed more than 28 days after the judgment had been entered and in any case, the Plaintiff improperly sought to relitigate the same issues he had presented to the Court in his prior motion for fees. In addition, the affidavits submitted were in direct violation Local Rule 6.3(a), Further as a matter of law, the Plaintiff was not entitled to any fees incurred after the acceptance date of the offer of judgment.

Yesterday, the Second Circuit issued its decision in *Lilly*. See 2019 U.S. App. LEXIS 24153 (August 14, 2019). The court vacated the District Court's decision and specifically held that a Plaintiff was not entitled to any fees for time spent after the Rule 68 offer of judgment had been accepted.

> The accepted Rule 68 offer at issue here (i.e., the contract) unambiguously states that the recoverable attorney's fees, expenses, and costs are limited to those incurred by the date of the offer, which was October 26, 2016.The fees Rothman charged for work on the fee application and reply brief in support of that application were incurred between November 30, 2016, and January 20, 2017, after the cut-off date for fees in the agreement. Therefore, they cannot be recovered by Lilly, and the district court had no authority to award them.

> \* \* \* \*

> Thus, we conclude that when a settlement cuts off a plaintiff's entitlement to attorney's fees on a specific date, a district court may not award a party attorney's fees for work incurred after that cut-off date. This includes fees for work performed preparing a fee application submitted to the district court in the event the parties are unable to agree on the attorney's fees to be awarded despite a good faith effort to negotiate If a plaintiff desires fees on fees in the event a fee application to the district court is required, the plaintiff should ensure that the settlement terms do not foreclose the availability of such fees. Accordingly, the portion of the district court's decision and order granting Lilly attorney's fees for all work performed after October 26, 2016, cannot stand.

Id. at \*\*28, 34. (footnotes omitted). A copy of the decision is enclosed.

Honorable Andrew L. Carter
August 15, 2019
Page 3

In light of the foregoing, as well as the other arguments presented by the Defendants in opposition to the motion, Plaintiff's motion for reconsideration shod be denied in its entirety.

Attorney for the
Defendants

By:  Mark N. Reinharz
Bond, Schoeneck & King, PLLC
1010 Franklin Avenue
Garden City, New York 11530
(516) 267-6320
mreinharz@bsk.com

Attorney for the
Individual Defendants

By: Holly G. Rogers
Melick & Porter LLP
800 Third Avenue
New York, NY 10022
(212) 541-7236
hrogers@melicklaw.com

187126.1 8/14/2019

17-2823 (L)
*Kayheem Lilly v. The City of New York, et al.*

# In the
# United States Court of Appeals
## For the Second Circuit

———

AUGUST TERM, 2018

ARGUED: OCTOBER 30, 2018
DECIDED: AUGUST 14, 2019

Nos. 17-2823(L)-cv, 17-3000(XAP)-cv

KAYHEEM LILLY,
*Plaintiff-Appellee-Cross-Appellant,*

*v.*

THE CITY OF NEW YORK; NYPD DETECTIVE MALCOLM FREEMAN,
SHIELD NO. 7049; NYPD POLICE OFFICER SOUL KIM, SHIELD NO. 10804,
*Defendants-Appellants-Cross-Appellees,*

JOHN DOE SERGEANT; JOHN DOES, RICHARD ROES; ANDREW HONG;
DONALD CAMBRIDGE; JORGE TAJEDA; FRANK BATISTA; KEVIN
WHETSTONE,
*Defendants.*[*]

———

Appeal from the United States District Court
for the Southern District of New York.
No. 16 Civ. 322 – Edgardo Ramos, *Judge.*

———

[*] Consistent with the order entered by this Court on October 18, 2013, ECF No. 118,
we use the short-form caption for the purpose of publishing this opinion.

2

Before: WALKER, LEVAL, AND DRONEY, *Circuit Judges*.

——————

Kayheem Lilly ("Lilly") filed a § 1983 complaint against the City of New York and individual police officers for alleged deprivations of his constitutional rights.  Defendants presented Lilly with an offer of judgment pursuant to Federal Rule of Civil Procedure 68 for $10,001 and reasonable attorney's fees, expenses, and costs incurred "to the date of [the] offer."  Lilly accepted the offer, but the parties were unable to agree upon the sum of attorney's fees, expenses, and costs to be paid.  Lilly filed a motion with the district court for an award of reasonable attorney's fees, expenses, and costs, that included the hours Lilly's solo practitioner attorney spent on clerical tasks and incurred preparing the fee application.  The district court granted the application but reduced the requested hourly rate because of the simple, "relatively straightforward" nature of the case, and imposed a ten percent across-the-board reduction to the fee award to account for clerical tasks performed by the attorney.  We AFFIRM the district court's decision to reduce Lilly's attorney's reasonable hourly rate in light of the simple nature of this case, as well as the district court's decision to reduce the hours claimed through an across-the-board reduction to reflect the clerical work performed.  We REVERSE and VACATE, however, the district court's decision to award Lilly attorney's fees for the work incurred preparing the fee application because the express terms of the accepted Rule 68 offer of judgment limit the fees recoverable to those incurred "to the date of [the] offer."

——————

JEFFREY A. ROTHMAN, Law Office of Jeffrey A. Rothman, New York, NY, *for Plaintiff-Appellee-*

3

1    *Cross-Appellant.*

2    ELINA DRUKER, Of Counsel (Richard Dearing, *on*
3    *the brief*), for Zachary W. Carter, Corporation
4    Counsel, New York, NY, *for Defendants-Appellants-*
5    *Cross-Appellees.*

6    ————

7    JOHN M. WALKER, JR., *Circuit Judge*:

8    Kayheem Lilly ("Lilly") filed a § 1983 complaint against the
9    City of New York and individual police officers for alleged
10   deprivations of his constitutional rights. Defendants presented Lilly
11   with an offer of judgment pursuant to Federal Rule of Civil Procedure
12   68 for $10,001 and reasonable attorney's fees, expenses, and costs
13   incurred "to the date of [the] offer." Lilly accepted the offer, but the
14   parties were unable to agree upon the sum of attorney's fees,
15   expenses, and costs to be paid. Lilly filed a motion with the district
16   court for an award of reasonable attorney's fees, expenses, and costs,
17   that included the hours Lilly's solo practitioner attorney spent on
18   clerical tasks and incurred preparing the fee application. The district
19   court granted the application but reduced the requested hourly rate
20   because of the simple, "relatively straightforward" nature of the case,
21   and imposed a ten percent across-the-board reduction to the fee
22   award to account for clerical tasks performed by the attorney. We
23   AFFIRM the district court's decision to reduce Lilly's attorney's
24   reasonable hourly rate in light of the simple nature of this case, as well
25   as the district court's decision to reduce the hours claimed through an
26   across-the-board reduction to reflect the clerical work performed. We
27   REVERSE and VACATE, however, the district court's decision to
28   award Lilly attorney's fees for the work incurred preparing the fee
29   application because the express terms of the accepted Rule 68 offer of

4

1  judgment limit the fees recoverable to those incurred "to the date of
2  [the] offer."

3                              **BACKGROUND**

4      Plaintiff-Appellee-Cross-Appellant Lilly filed a complaint on
5  January 14, 2016, alleging that his civil rights were violated by the City
6  of New York and several New York City police officers (collectively,
7  the "City") on two occasions in October 2014.  The first claim was for
8  use of excessive force and the second was for improper issuance of
9  three summonses for threatening behavior toward an officer,
10  possession of an open container, and littering, all of which were later
11  dismissed.

12     Lilly was represented by Jeffrey Rothman ("Rothman"), a civil
13  rights attorney and solo practitioner, who filed the complaint on
14  Lilly's behalf.  On October 26, 2016, the City presented Lilly with an
15  offer of judgment pursuant to Rule 68 of the Federal Rules of Civil
16  Procedure, which Lilly accepted.  The offer stated:

17         Pursuant to Rule 68 of the Federal Rules of Civil
18         Procedure, defendants hereby offer to allow plaintiff
19         [Kayheem] Lilly to take a judgment against the City of
20         New York in this action for the total sum of Ten
21         Thousand and One ($10,001.00) Dollars, plus reasonable
22         attorneys' fees, expenses, and costs to the date of this
23         offer for plaintiff's federal claims.[1]

24     The City and Lilly (through Rothman) attempted to negotiate a
25  settlement regarding attorney's fees, expenses, and costs but were
26  unsuccessful.  Rothman filed a formal motion for an award of
27  attorney's fees, expenses, and costs with the district court, pursuant
28  to 42 U.S.C. § 1988, for a total sum of $34,527.  That figure represents
29  50.3 hours of work up to the date of the offer of judgment and 6.5

---

[1] Joint App'x at 45.

5

hours of work preparing the attorney's fee application at an hourly rate of $600, as well as 11.5 hours for work after the fee application and through the filing of Lilly's reply brief at an hourly rate of $625.[2] The City objected to the fee request on the grounds that: (1) his requested hourly rate was excessive, (2) the number of hours expended was unreasonable, and (3) fees incurred after acceptance of the Rule 68 offer are not recoverable under the terms of the offer.

The district court granted Rothman reduced fees, expenses, and costs in the amount of $28,128.99. The district court agreed that Rothman had comparable experience and qualifications to other civil rights attorneys who have received attorney's fee awards in the low $600 per hour range, but believed that the "simplicity of this case warrant[ed] a reduction of his claimed hourly rates."[3] Due to the "relatively straightforward" nature of the case, the district court found an hourly rate of $450 to be reasonable.[4] The district court also imposed a ten percent across-the-board cut to the award because some of the hours claimed were for clerical tasks that he had billed at an attorney's hourly rate. Lastly, notwithstanding the fact that the Rule 68 offer of judgment limited recoverable fees to those incurred prior to the offer, the district court granted Lilly attorney's fees for the time Rothman spent preparing the fee application. This appeal and cross-appeal followed.

## DISCUSSION

The City appeals the district court's order granting "fees on fees" (*i.e.,* the attorney's fees Rothman incurred in litigating the application for an award of attorney's fees) because the Rule 68 offer

---

[2] The increase reflects a $25 increase in Rothman's hourly rate that became effective on January 1, 2016.
[3] Joint App'x 277–79.
[4] *Id.*

6

of judgment limited the recoverable attorney's fees to only those incurred prior to the offer.  Lilly cross-appeals the district court's order reducing Rothman's hourly rate to $450 and prohibiting Rothman from receiving his full hourly rate for clerical tasks.

We review a district court's award for attorney's fees, expenses, and costs for abuse of discretion.[5]  "A district court abuses its discretion if it (1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions."[6] "Given the district court's inherent institutional advantages in this area, our review of a district court's fee award is highly deferential."[7] This high degree of deference is appropriate because "[w]e can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it."[8]  We review questions of law regarding the legal standard for granting or denying attorney's fees *de novo*.[9]  We also review a district court's interpretation of a Rule 68 offer *de novo*.[10]

## I.   Calculation of the Reasonable Hourly Rate

Lilly argues that the district court erred in reducing Rothman's rate from $600 and $625 per hour to $450 per hour because of the "duration and simplicity" of the case.  Specifically, he argues that after

---

[5] *See Millea v. Metro-North R. Co.,* 658 F.3d 154, 166 (2d Cir. 2011).

[6] *Id.* (internal quotation marks omitted).

[7] *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund,* 450 F.3d 91, 96 (2d Cir. 2006) (per curiam).

[8] *Fox v. Vice,* 563 U.S. 826, 838 (2011).

[9] *See Scarangella v. Group Health, Inc.,* 731 F.3d 146, 151 (2d Cir. 2013).

[10] *Steiner v. Lewmar, Inc.,* 816 F.3d 26, 31 (2d Cir. 2016).

7

the Supreme Court's decision in *Perdue v. Kenny A. ex rel. Winn*,[11] district courts can no longer consider the "relatively straightforward" nature of an action in calculating the reasonable hourly rate to be awarded.  To the extent our decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*[12] permits consideration of the simplicity of litigation in determining the appropriate hourly rate, Lilly contends that *Perdue* overruled *Arbor Hill*.  Lilly's arguments are without merit.

### A. Early History of Fee-Shifting Jurisprudence

Before addressing *Arbor Hill* and *Perdue*, we think it helpful to briefly review the relevant history of attorney's fees jurisprudence.

In 1976, Congress enacted the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988 ("Fees Act"), which authorized district courts to award the prevailing party in civil rights actions "a reasonable attorney's fee."[13]  The Act did not specify the appropriate method for calculating a reasonable attorney's fee, but the House and Senate Reports referred to two methods that had developed in the circuit courts.[14]

The first, known as the lodestar method, was adopted by the Third Circuit in *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*[15]  This approach calculates attorney's fees by multiplying the attorney's usual hourly rate by the number of hours billed, to produce a figure known as the lodestar.[16]  After determining the lodestar, the district court then has discretion

---

[11] 559 U.S. 542 (2010).
[12] 522 F.3d 182 (2d Cir. 2008).
[13] *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).
[14] *See Arbor Hill*, 522 F.3d at 186; *see also Hensley*, 461 U.S. at 429–30.
[15] 487 F.2d 161 (3d Cir. 1973).
[16] *Id.* at 167–68.

8

to adjust the final amount to ensure that the fee is reasonable.[17]

The second method, known as the *Johnson* approach, was developed by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*[18]   Instead of starting with the attorney's usual hourly rate, multiplying it by the number of hours worked, *and then* determining whether that figure (the lodestar) should be adjusted, the district court determines a reasonable attorney's fee in one step by considering twelve factors.[19]  These twelve factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[20]

The Supreme Court first considered the appropriate method to calculate a reasonable attorney's fee in *Hensley v. Eckerhart*.[21]  The Court "adopted the lodestar method in principle, without, however, fully abandoning the *Johnson* method."[22]   Instead of using the attorney's usual hourly rate, the Court instructed district courts to

---

[17] *Id.* at 168–69.

[18] 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87 (1989).

[19] *See id.* at 717–19.

[20] *Arbor Hill,* 522 F.3d at 186 n.3 (citing *Johnson,* 488 F.2d at 717–19).

[21] 461 U.S. 424 (1983).

[22] *Arbor Hill,* 522 F.3d at 188 (internal citation omitted).

9

1     determine a "reasonable hourly rate," and specifically referred to the
2     *Johnson* factors as useful tools for determining what is reasonable.[23]
3     The Court described this process of determining a reasonable hourly
4     rate and then multiplying it by the reasonable hours billed as "an
5     objective basis on which to make an initial estimate of the value of a
6     lawyer's services," (*i.e.*, the lodestar).[24]  The Court went on to hold that
7     after calculating the lodestar in this manner, a district court has
8     discretion to increase or decrease the final fee in "cases of exceptional
9     success" or "only partial or limited success," respectively.[25]

10         A year later, in *Blum v. Stenson,* the Court reiterated its holding
11     in *Hensley,* that the initial fee award should be determined by
12     multiplying a reasonable hourly rate by the reasonable hours
13     expended, and that the final award can be increased or decreased in
14     exceptional cases to achieve a reasonable fee.[26]  The Court explained
15     that the Fees Act:

16         requires a "reasonable fee," and there may be
17         circumstances in which the basic standard of reasonable
18         rates multiplied by reasonably expended hours results in
19         a fee that is either unreasonably low or unreasonably
20         high.  When, however, the applicant for a fee has carried
21         his burden of showing that the claimed rate and number
22         of hours are reasonable, the resulting product is
23         presumed to be the reasonable fee contemplated by
24         § 1988.[27]

25         This hybrid approach was again approved by the Court in the
26     1986 case of *Pennsylvania v. Delaware Valley Citizen's Council for Clean*

---

[23] *Id.* (citing *Hensley,* 461 U.S. at 434 n.9).
[24] *Hensley,* 461 U.S. at 433.
[25] *Id.* at 435–37.
[26] 465 U.S. 886, 896–97 (1984).
[27] *Id.* at 897.

10

1  *Air*.[28]  In both *Blum* and *Delaware Valley*, however, the Court clarified
2  that many of the *Johnson* factors "are subsumed within the initial
3  calculation" of the lodestar (reasonable hours expended multiplied by
4  the reasonable hourly rate), and therefore "cannot serve as
5  independent bases for increasing [or decreasing] the basic fee award,"
6  (*i.e.*, the lodestar).[29]  Specifically, the Court stated that the novelty and
7  complexity of the issues, the special skill and experience of counsel,
8  the quality of representation, and the results obtained from the
9  litigation should be "fully reflected in the number of billable hours
10 recorded by counsel" or "the reasonableness of the hourly rates."[30]  As
11 a result, it is inappropriate for a district court to increase or decrease
12 the lodestar figure on account of any of these factors, because they are
13 already accounted for in calculating the reasonable hourly rate or
14 reasonable hours billed to determine the lodestar.[31]

15         B.  *Arbor Hill*

16        The Supreme Court's adoption of a hybrid approach caused
17 confusion amongst the lower courts as to how to balance the bright-
18 line standards of the lodestar model with the numerous evaluations
19 required by the *Johnson* factors and the district court's ability to
20 exercise its discretion to enhance or cut the final fee award in
21 exceptional circumstances.[32]

22        In *Arbor Hill*, we attempted to resolve some of this tension and

---

[28] 478 U.S. 546, 563–64 (1986).
[29] *Id.* at 564–65 (internal quotation marks omitted) (citing *Blum*, 465 U.S. at 898–900).
[30] *Blum*, 465 U.S. at 898; *see also Delaware Valley*, 478 U.S. at 564–65.
[31] *See Blum*, 465 U.S. at 898–99, 900; *see also Delaware Valley*, 478 U.S. at 564–65, 566–67.
[32] *See Arbor Hill*, 522 F.3d at 188 ("After *Hensley* and *Blum*, circuit courts struggled with the nettlesome interplay between the lodestar method and the *Johnson* method.").

11

clarify our circuit's fee-setting jurisprudence.  We instructed district courts to calculate a "presumptively reasonable fee"[33] by determining the appropriate billable hours expended and "setting a reasonable hourly rate, taking account of all case-specific variables."[34]  We explained with respect to the latter:

> [T]he district court, in exercising its considerable discretion, [should] bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate.  The reasonable hourly rate is the rate a paying client would be willing to pay.  In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.  The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case.  The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."[35]

In the wake of *Arbor Hill*, we have consistently applied this method of determining a reasonable hourly rate by considering all pertinent factors, including the *Johnson* factors, and then multiplying

---

[33] We used the term "presumptively reasonable fee" instead of the traditional term "lodestar" because the meaning of the latter term "has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness."  *Id.* at 190.  The Supreme Court, however, continues to use the term according to the definition provided by the Court in *Hensley*.  For all intents and purposes, the two terms mean the same thing.

[34] *Id.* at 189–90.

[35] *Id.* at 190.

12

1    that rate by the number of hours reasonably expended to determine
2    the presumptively reasonable fee.[36]    It is only after this initial
3    calculation of the presumptively reasonable fee is performed that a
4    district court may, in extraordinary circumstances, adjust the
5    presumptively reasonable fee when it "does not adequately take into
6    account a factor that may properly be considered in determining a
7    reasonable fee."[37]

8                          C. *Perdue*

9          After announcing the hybrid approach for calculating
10   attorney's fees in *Hensley*, and clarifying when it is permissible for a
11   district court to increase or decrease the lodestar value in exceptional
12   cases in *Blum* and *Delaware Valley*, the Supreme Court's revisited its
13   fee-shifting jurisprudence in 2010 in *Perdue v. Kenny A. ex rel. Winn*.

---

[36] *See, e.g., Gortat v. Capala Bros., Inc.*, 621 F. App'x 19, 22 (2d Cir. 2015) (summary order) ("In calculating the 'presumptively reasonable fee,' which is generally arrived at by multiplying the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate, this Court has recommended that a district court take into account what a paying client would be willing to pay." (internal citation and quotation marks omitted)); *Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 3–4 (2d Cir. 2013) (summary order) ("[W]e have directed consideration of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees—including the *Johnson* factors—in setting a reasonable hourly rate." (internal quotation marks omitted)); *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011) ("Attorneys' fees are awarded by determining a presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours."); *Millea*, 658 F.3d at 166 ("Both this Court and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'"); *Konits v. Valley Stream Cent. High Sch. Dist.*, 350 F. App'x 501, 503 (2d Cir. 2009) (summary order) ("In determining reasonable attorneys' fees, a district court must: (1) set a reasonable hourly rate, bearing in mind all of the case specific variables, and (2) use the reasonable hourly rate to calculate a 'presumptively reasonable fee.'").

[37] *Millea*, 658 F.3d at 167 (quoting *Perdue*, 559 U.S. at 554).

13

1    In *Perdue,* the Court was "asked to decide whether either the
2    quality of an attorney's performance or the results obtained are
3    factors that may properly provide a basis for an enhancement" of the
4    lodestar value.[38]  The Court first affirmed its long-standing position
5    that "the lodestar method yields a fee that is presumptively
6    sufficient," but "that presumption may be overcome in those rare
7    circumstances in which the lodestar does not adequately take into
8    account a factor that may properly be considered in determining a
9    reasonable fee."[39]  Factors that are already subsumed in the lodestar
10   calculation cannot be used to enhance or cut the lodestar amount.[40]
11   The Court reiterated that "the novelty and complexity of a case
12   generally may not be used as a ground for enhancement because these
13   factors 'presumably are fully reflected in the number of billable hours
14   recorded by counsel,'" as well as the reasonable hourly rate.[41]  Thus,
15   *Perdue* confirmed the long-standing approach to calculating
16   attorney's fees endorsed by the Supreme Court in *Hensley, Blum,*
17   *Delaware Valley*, as well as our circuit in *Arbor Hill.*

18        D. The District Court's Reasonable Hourly Rate
19            Determination

20        In his fee application, Lilly requested an hourly rate first at $600
21   and later at $625 per hour for Rothman's work on the matter.  The
22   City argued that this rate was unreasonable because the case was a
23   simple, "garden variety" civil rights case.[42]  The district court agreed
24   with the City that the case was "relative[ly] simpl[e]"[43] and, relying

---

[38] 559 U.S. at 554.
[39] *Id.* at 552, 553–54.
[40] *Id.* at 553 (citing *Delaware Valley*, 478 U.S. at 566).
[41] *Id.* (quoting *Blum*, 465 U.S. at 898 (brackets omitted)).
[42] *Lilly v. City of New York,* No. 16 Civ. 322 (ER), 2017 WL 3493249, at *2 (S.D.N.Y. Aug. 15, 2017).
[43] *Id.* at *3–5.

14

1    on *Arbor Hill*, that the hourly rate should reflect this lack of
2    complexity.[44] Thus, the district court looked to the reasonable hourly
3    rates for civil rights attorneys working on a simple, garden variety
4    civil rights case in the Southern District of New York.[45] The district
5    court found that similar, straightforward civil rights cases in the
6    Southern District involving attorneys with similar experience and
7    qualifications as Rothman resulted in hourly rates between $350 and
8    $450.[46] Therefore, the district court awarded Rothman an hourly rate
9    of $450, at the top of the range.

10          We find no error in the district court's reasoning.   As we
11   emphasized in *Arbor Hill*, "[t]he reasonable hourly rate is the rate a
12   paying client would be willing to pay . . . bear[ing] in mind that a
13   reasonable, paying client wishes to spend the minimum necessary to
14   litigate the case effectively."[47]   It was entirely appropriate for the
15   district court to consider the complexity of a matter because a
16   reasonable paying client would consider the complexity of his or her
17   case when deciding whether an attorney's proposed hourly rate is
18   fair, reasonable, and commensurate with the proposed action.   The
19   district court's decision to consider both Rothman's experience and
20   the garden-variety nature of the litigation, which "lasted less than 10
21   months, required no depositions, and involved no substantial
22   motions or briefings" or appearances before the district court,[48] was
23   consistent with our direction for district courts, "in exercising [their]
24   considerable discretion, to bear in mind *all* of the case-specific
25   variables that we and other courts have identified as relevant to the

---

[44] *Id.* at *4.
[45] *Id.* at *4–5.
[46] *Id.* at *5.
[47] *Arbor Hill*, 522 F.3d at 190.
[48] *Lilly*, 2017 WL 3493249, at *5.

15

1   reasonableness of attorney's fees in setting a reasonable hourly
2   rate."[49]

3        Lilly's argument that the district court's consideration of the
4   simple nature of this case and our opinion in *Arbor Hill* permitting
5   such consideration are in conflict with *Perdue* is misplaced. *Perdue*
6   addressed whether a district court, *after* calculating a reasonable
7   hourly rate and multiplying it by the reasonable number of hours
8   worked to produce the lodestar, could grant a fee enhancement or cut
9   *to the lodestar amount* in recognition of the quality of an attorney's
10  performance or the results obtained.[50] *Perdue* did not involve a
11  challenge to the district court's computation of the reasonable hourly
12  rate at all—it only concerned the propriety of the fee enhancement. It
13  was in this context that the Court reiterated its prior statements from
14  *Blum* and *Delaware Valley*, that the novelty and complexity of a case
15  generally may not be used as a ground for an enhancement or
16  reduction because those factors are already reflected in the reasonable
17  hourly rate and reasonable hours billed (*i.e.*, the lodestar).[51]

18       *Perdue,* therefore, did not overrule *Arbor Hill* or otherwise
19  prohibit district courts from considering the novelty or complexity of
20  a case in determining the reasonable hourly rate or hours billed.
21  *Perdue* is consistent with prior Supreme Court opinions that indicate
22  that case-specific factors like the novelty or complexity of the matter
23  are appropriately considered in determining the reasonable hourly
24  rate or hours billed. Importantly, the *Perdue* Court stated that "the

---

[49] *Arbor Hill*, 522 F.3d at 190.
[50] *Perdue*, 559 U.S. at 548 (describing how the district court determined a reasonable
hourly rate and reasonable hours billed, multiplied them to calculate a lodestar of
approximately $6 million, and "then enhanced this award by 75%, concluding that
the lodestar calculation did not take into account" various factors warranting an
increase).
[51] *Id.* at 553.

16

lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a *comparable case*."[52]   And as in *Delaware Valley* and *Blum*, the *Perdue* Court specifically stated that the novelty and complexity of a case are presumably reflected in the lodestar amount.[53]

Finally, Lilly points to a quote from the *Perdue* opinion, in which the Court criticizes the old *Johnson* method created by the Fifth Circuit because it "gave very little actual guidance to district courts" and "placed unlimited discretion in trial judges and produced disparate results."[54]   This, Lilly says, is evidence that the *Johnson* factors, including the novelty and complexity of the case, cannot be used by district courts to determine a reasonable fee.   But Lilly confuses the Court's criticism of the "*Johnson* approach"[55] with the permissive use of the *Johnson* factors in determining the reasonable hourly rate and reasonable hours billed to determine the presumptively reasonable fee or lodestar.[56]   *Hensley* and its progeny make clear that while a strict application of the *Johnson* method of calculating attorney's fees used by the Fifth Circuit is too imprecise and variable to be reliable, the twelve *Johnson* factors remain important tools for helping district courts calculate the lodestar and, in exceptional cases, determining whether an enhancement or cut to

---

[52] *Id.* at 551 (emphasis omitted) (emphasis added).

[53] *Id.* at 553; *Delaware Valley,* 478 U.S. at 565; *Blum,* 465 U.S. at 898.

[54] *Perdue,* 559 U.S. at 550–51 (internal quotation marks omitted).

[55] *Id.* at 551–52.

[56] *See Jin v. Pacific Buffet House, Inc.,* No. 06-CV-579 (VVP), 2010 WL 2653334, at *2 n.2 (E.D.N.Y. June 25, 2010) (*Perdue* "cautions against using a strict *Johnson* approach as the primary basis for determining reasonable attorneys' fees, but nowhere calls into question the idea of using relevant *Johnson* factors in helping to come to a reasonable fee").

17

1   the lodestar is warranted.[57]

2       Finding that the district court correctly applied the law,
3   reached a conclusion within the range of permissible decisions, and
4   did not abuse its discretion on a clearly erroneous factual finding, we
5   have no basis to vacate the district court's decision to award Rothman
6   an hourly rate of $450.  We therefore affirm this portion of the district
7   court's order.

8       **II.    Reduction of the Fee for Clerical Tasks**

9       Lilly also asserts that the district court erred by prohibiting
10  Rothman from receiving his full hourly rate of $450 for clerical tasks,
11  such as sending faxes, printing documents, etc.  Lilly argues that a
12  district court should not "reduce the hourly billing rate of a solo
13  practitioner attorney who does not operate with the assistance of
14  associates, paralegals, or other support staff concerning time he or she
15  reasonably spends on clerical tasks in advancing the litigation."[58]

16      We have not addressed whether a district court may discount
17  the reasonable hours expended or the reasonable hourly rate an
18  attorney spends on tasks that are clerical or administrative in nature.
19  But the Supreme Court provided guidance on this question in
20  *Missouri v. Jenkins by Agyei*.[59]  In that case, the Court held that plaintiffs
21  could recover attorney's fees under the Fees Act for work performed
22  by paralegals and law clerks under the supervision of an attorney at

---

[57] *See Hensley,* 461 U.S. at 434 n.9 ("The district court also may consider [the] factors identified in *Johnson* . . . , though it should note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."); *Delaware Valley,* 478 U.S. at 563–64 ("[In *Hensley,* we] adopted a hybrid approach that shared elements of both *Johnson* and the lodestar method of calculation.").

[58] Appellee-Cross-Appellant's Br. at 7.

[59] 491 U.S. 274 (1989).

18

1   the market rate for their services, rather than at cost to the attorney.[60]
2   However, the Court cautioned that "purely clerical or secretarial tasks
3   should not be billed at a paralegal rate" by either a paralegal or an
4   attorney performing such tasks.[61]  The Court explained:

5        It is appropriate to distinguish between legal work, in the
6        strict sense, and investigation, clerical work, compilation
7        of facts and statistics and other work which can often be
8        accomplished by non-lawyers but which a lawyer [or
9        paralegal] may do because he has no other help available.
10       Such non-legal work may command a lesser rate.  Its
11       dollar value is not enhanced just because a lawyer [or
12       paralegal] does it.[62]

13       We therefore conclude that the district court did not commit
14   legal error in reducing Lilly's fee award to account for clerical tasks
15   performed by Rothman.  As we have stated, the key inquiry in
16   determining the reasonableness of an attorney's hourly rate and
17   hours billed is whether a paying client would be willing to pay the
18   fee.[63]  The answer to this question, of course, will vary depending on
19   the circumstances of the case, the attorney, and the customs in the
20   relevant legal market.  Therefore, while district courts have the legal
21   authority and discretion to either reduce an attorney's hourly rate for
22   time spent on clerical tasks or apply an across-the-board reduction to
23   the hours billed or total fee award to account for time spent on clerical
24   tasks (or block-billed time entries reflecting a mix of clerical and legal
25   work), a district court is not required to make such reductions.  As

---

[60] *Id.* 286–87.

[61] *Id.* at 288 n.10.

[62] *Id.* (internal quotation marks omitted).

[63] *Arbor Hill,* 522 F.3d at 190; *see also Perdue,* 559 U.S. at 551 ("[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. . . ." (emphasis in original)).

19

1   with all aspects of our fee-shifting jurisprudence, we afford district
2   courts broad discretion in awarding attorneys' fees because they are
3   much closer to the details of each individual case and can better
4   determine what is reasonable and appropriate in the fee calculus for
5   the particular case.[64]

6        Here, the district court reviewed the time sheets submitted by
7   Rothman and found a variety of obviously clerical tasks, as well as
8   entries that "blend clerical tasks with legal tasks."[65]  A review of the
9   time sheets confirms that many entries describe clerical tasks that are
10  not appropriately billed at Rothman's reasonable hourly rate of $450,
11  such as sending and receiving faxes, requesting and receiving medical
12  records, serving papers, and hand-delivering courtesy copies of
13  filings to the courthouse.[66]  The fact that Rothman is a solo practitioner
14  does not entitle him to his full hourly rate as an attorney for purely
15  clerical work.  Indeed, it is highly unlikely that a paying client would
16  agree to pay any person $450 for an hour of sending and receiving
17  faxes, calling medical offices, and delivering papers.  We find the
18  district court's imposition of a ten percent reduction to the fee award
19  on account of clerical work appropriate, and certainly not an abuse of
20  discretion, because the time entries reflecting 50.3 hours of work show
21  at least 5 hours of purely clerical work.[67]  In reducing Rothman's
22  hours by ten percent to account for clerical tasks, we are confident
23  that the district court achieved "rough justice," if not "auditing
24  perfection," in its calculation of the appropriate fee award.[68]  We

---

[64] *See Fox*, 563 U.S. at 838.
[65] *Lilly*, 2017 WL 3493249, at *6.
[66] *See* Joint App'x at 78, 89–92, 247.
[67] *See McDonald*, 450 F.3d at 96 ("A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application." (internal quotation marks omitted)).
[68] *See Fox*, 563 U.S. at 838.

20

therefore uphold this portion of the district court's order.

## III.   Award of Fees on Fees

Finally, the City challenges the district court's decision to grant attorney's fees for time Rothman spent working on the fee application and reply brief in support of that application.  The City asserts that the district court did not have the authority to award those fees because they were incurred after the City made, and Lilly accepted, the Rule 68 offer of judgment, which explicitly contemplated the payment of attorney's fees only "up until the date of the offer."[69]

Ordinarily, a district court has authority and discretion to award attorney's fees for hours expended on a fee application made under the Fees Act, so-called fees on fees.[70]  The question here is whether the parties' agreement to settle the case and cut off attorney's fees as of the time of the offer circumscribes the district court's authority to award fees accrued after the offer date.  We believe it does.

Federal Rule of Civil Procedure 68 permits a party defending a claim to serve an opposing party with "an offer to allow judgment on specified terms."[71]  If the opposing party accepts the offer, then either party may file the offer and notice of acceptance with the court, and the "clerk must then enter [the] judgment" specified in the agreement.[72]  If the opposing party rejects the offer and that party eventually obtains a judgment that is not as favorable as the

---

[69] *See* Joint App'x at 45.

[70] *See Gagne v. Maher*, 594 F.2d 336, 343–44 (2d Cir. 1979), *aff'd*, 448 U.S. 122 (1980); *see also Hines v. City of Albany*, 862 F.3d 215, 223 (2d Cir. 2017) ("Prevailing parties under Section 1988 are therefore entitled to recover a reasonable fee for preparing and defending a fee application.").

[71] Fed. R. Civ. P. 68(a).

[72] *Id.*

21

unaccepted offer, the opposing party must pay the costs incurred by the defendant after the offer was made,[73] which includes attorney's fees.[74]  The purpose of this mechanism is to "encourage settlement and avoid litigation" by "prompt[ing] both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits."[75]

Like a typical settlement agreement, an accepted Rule 68 offer of judgment is a contract, and it must be interpreted according to ordinary contract principles.[76]  Critically, "[i]f the terms of a contract are clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself."[77]

The accepted Rule 68 offer at issue here (*i.e.*, the contract) unambiguously states that the recoverable attorney's fees, expenses, and costs are limited to those incurred by the date of the offer, which was October 26, 2016.[78]  The fees Rothman charged for work on the fee application and reply brief in support of that application were incurred between November 30, 2016, and January 20, 2017, after the cut-off date for fees in the agreement.[79]  Therefore, they cannot be recovered by Lilly, and the district court had no authority to award them.

Nonetheless, the district court determined that because the

---

[73] Fed. R. Civ. P. 68(d).
[74] *Marek v. Chesny*, 473 U.S. 1, 9 (1985).
[75] *Id.* at 5.
[76] *Steiner*, 816 F.3d at 31.
[77] *Id.* at 32 (internal quotation marks omitted).
[78] *See* Joint App'x at 45–47.
[79] *See id.* at 247.

22

1     parties acted in good faith in negotiating the attorney's fees to be paid

2     to Lilly, but were simply unable to agree on a reasonable amount,

3     equity counseled in favor of granting Lilly attorney's fees for the time

4     spent working on the fee application and reply brief.[80] The district

5     court is not alone in granting these fees on fees as a matter of equity

6     despite the clear terms of the parties' agreements barring such

7     awards.[81] As noble as this practice may be, it violates the first

8     principle of contract interpretation: "where the language of the

9     contract is clear and unambiguous, the contract is to be given effect

10     according to its terms."[82] By awarding Lilly fees beyond what the

11     parties agreed to, the district court effectively rewrote the contract.

12     This it cannot do.

13         Lilly makes three arguments for why the district court did not

14     err, none of which is persuasive. First, he asserts that the offer of

15     judgment's inclusion of reasonable attorney's fees up to the date of

16     the offer "necessarily includes fees for the time that an attorney must

17     spend to move to obtain those underlying fees if Defendants will not

18     enter into a reasonable settlement concerning the underlying fees."[83]

19     This interpretation of the contract is not supported by its clear terms,

---

[80] *Lilly*, 2017 WL 3493249, at *8.

[81] *See, e.g., Rosado v. City of New York*, No. 11 Civ. 4285 (SAS), 2012 WL 955510, at *6 (S.D.N.Y. Mar. 15, 2012) ("Plaintiff also seeks fees incurred by counsel in preparing the instant fee application. However, both the Rule 68 Offer of Judgment and plaintiff's Notice of Acceptance specifically limited reasonable attorney's fees, expenses and costs *to the date of this offer*. . . . Nonetheless, as a matter of equity, plaintiff should be awarded some amount for the time his counsel spent in preparing the instant fee application." (internal quotation marks omitted)). *But see Schoolcraft v. City of New York*, No. 10 Civ. 6005 (RWS), 2016 WL 4626568, at *13 (S.D.N.Y. Sept. 6, 2016) ("The Rule 68 Judgment provides 'plaintiff shall be entitled to reasonable attorney's fees, expenses, and costs to the date of this offer.' On the terms of the agreement alone, fees-on-fees are denied." (internal citation omitted)).

[82] *Steiner*, 816 F.3d at 31 (modifications omitted) (internal quotation marks omitted).

[83] Appellee-Cross-Appellant's Br. at 28.

23

1    nor is it a necessary assumption.  There is nothing in the agreement's
2    terms to indicate that, in the event a fee application to the court is
3    needed to determine what constitutes "reasonable attorney's fees,"
4    the parties intended for any attorney's fees incurred by Lilly in that
5    process to be included in the amount the City agreed to pay as
6    reasonable attorney's fees.  To the contrary, the express terms of the
7    contract state that the City will only be liable for reasonable attorney's
8    fees incurred on or before the date of the offer, and not subsequent
9    thereto.  The district court acknowledged that the offer of judgment
10   contains "language expressly limiting recoverable fees and expenses
11   to those incurred prior to the Rule 68 Offer" before it then granted
12   fees on fees as a matter of equity.[84]

13       Second, Lilly invokes the doctrine of *contra proferentem* to assert
14   that the ambiguous language in the agreement "must be construed
15   against Defendants since they drafted it unilaterally in the context of
16   making a Rule 68 offer."[85]  Lilly's statement of the rule is correct: that
17   ambiguities in the language of a Rule 68 offer of judgment are to be
18   "construed against the party making the offer."[86]  But, as discussed,
19   the offer is not ambiguous.  Lilly cannot read ambiguity into the clear
20   terms of the contract in order to invoke the doctrine of *contra*
21   *proferentem.*

22       Finally, Lilly urges that even if the offer of judgment's terms do
23   in fact preclude fees on fees, then they should be held "void as a
24   matter of public policy."[87]  We are sympathetic to the fact that because
25   the parties were unable to agree on reasonable attorney's fees,
26   Rothman was forced to prepare, file, and argue a fee application to

---

[84] *Lilly*, 2017 WL 3493249, at *7.
[85] Appellee-Cross-Appellant's Br. at 31–32.
[86] *Steiner*, 816 F.3d at 31.
[87] Appellee-Cross-Appellant's Br. at 36.

24

1    seek his fee, and that due to the terms of the parties' agreement, he is
2    not able to be compensated for that extra work.    Nonetheless, the
3    argument that an offer of judgment or settlement agreement that cuts
4    off fees on fees is void as a matter of public policy is contradicted by
5    controlling Supreme Court precedent.

6          In *Evans v. Jeff D.*, the Court held that because the Fees Act
7    bestowed the right to an award of attorney's fees in civil rights actions
8    to the prevailing *party*, and not the attorney, parties were free to waive
9    their right to attorney's fees as part of a settlement agreement on the
10   merits.[88]    Specifically the Court stated that Congress neither
11   "bestowed fee awards upon attorneys nor rendered them
12   nonwaivable or nonnegotiable; instead, it added them to the arsenal
13   of remedies available to combat violations of civil rights, a goal not
14   invariably inconsistent with conditioning settlement on the merits on
15   a waiver of statutory attorney's fees."[89]    The Court reasoned that it
16   would be poor policy to prohibit litigants from waiving their
17   statutory right to attorney's fees as part of a compromise on the merits
18   because it would "impede vindication of civil rights, at least in some
19   cases, by reducing the attractiveness of settlement."[90]    Indeed, because
20   the attorney's fee award is often similar to or greater than the amount
21   of damages received on the merits,[91] it is "not implausible to
22   anticipate that parties to a significant number of civil rights cases will
23   refuse to settle if liability for attorney's fees remains open, thereby
24   forcing more cases to trial, unnecessarily burdening the judicial

---

[88] 475 U.S. 717, 730–32 (1986); *see also Venegas v. Mitchell*, 495 U.S. 82, 87–88 (1990) (holding that it is the party's right to waive, settle, or negotiate the party's entitlement to receive attorney's fees).

[89] *Evans*, 475 U.S. at 731–32.

[90] *Id.* at 732.

[91] *Id.* at 734–35 & n.24 (collecting examples of attorney's fee awards greater than the merits award).  In fact, this case is one such example.

25

1    system, and disserving civil rights litigants."[92]    These
2    pronouncements from the Supreme Court illustrate that, contrary to
3    Lilly's arguments, it is not against public policy for litigants to waive
4    their statutory right to attorney's fees—let alone fees on fees.

5          Thus, we conclude that when a settlement cuts off a plaintiff's
6    entitlement to attorney's fees on a specific date, a district court may
7    not award a party attorney's fees for work incurred after that cut-off
8    date.    This includes fees for work performed preparing a fee
9    application submitted to the district court in the event the parties are
10    unable to agree on the attorney's fees to be awarded despite a good
11    faith effort to negotiate.[93]  If a plaintiff desires fees on fees in the event
12    a fee application to the district court is required, the plaintiff should
13    ensure that the settlement terms do not foreclose the availability of
14    such fees.  Accordingly, the portion of the district court's decision and
15    order granting Lilly attorney's fees for all work performed after
16    October 26, 2016, cannot stand.

17                        **CONCLUSION**

18          We have considered the parties' other arguments and find them
19    to be without merit. We therefore AFFIRM, in part, the district court's
20    order setting Rothman's hourly rate at $450 per hour and reducing
21    Lilly's fee award by ten percent to account for clerical tasks billed by

---

[92] *Id.* at 736–37.

[93] Because the district court found that the parties in this case negotiated in good faith, *see Lilly*, 2017 WL 3493249, at *8, we decline to consider whether a district court may, as a matter of equity or otherwise, award fees on fees when a party negotiates in bad faith, despite the presence of a cut-off clause in the Rule 68 offer or settlement agreement. *See, e.g., Long v. City of New York*, No. 09 Civ. 6099 (AKH), 2010 U.S. Dist. LEXIS 81020, at *5–6 (S.D.N.Y. Aug. 6, 2010) ("The Rule 68 judgment limited recoverable fees and expenses to those incurred prior to the date of the offer. If the City's dispute over recoverable fees were in bad faith, th[e]n compensation for the work necessary for plaintiff['] s fee application may be justified.").

26

1    Rothman, and REVERSE and VACATE, in part, the district court's
2    decision and order awarding Lilly $7,290.00 for Rothman's work on
3    the fee application and reply brief in support of that application.